**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| RANDY TRUITT, LANCE KUYKENDALL, CARLTON WHITMIRE, DAVID TRUPP, KEVIN HERINCKX, and FRED SMITH, individually and on behalf of others similarly situated, | Case No.: 3:20-cv-00964 |
| Plaintiffs, | CLASS ACTION |
| vs. | |
| | **COMPLAINT AND JURY DEMAND** |
| FOREST RIVER, INC., an Indiana corporation, | |
| Defendant. | |

Plaintiffs Randy Truitt, Lance Kuykendall, Carlton Whitmire, David Trupp, Kevin Herinckx, and Fred Smith (collectively, "Plaintiffs") bring this action against Defendant Forest River, Inc., (hereinafter, "Forest River" or "Defendant"), by and through their attorneys, individually and on behalf of all others similarly situated, and allege as follows:

<u>INTRODUCTION</u>

1.      This is a class action lawsuit brought by Plaintiffs on behalf of themselves and a class of current and former owners and lessees of recreational vehicles ("RVs") manufactured, marketed, and distributed by Forest River with defective axles and a defective suspension that results in unstable and unsafe conditions while driving, including leaking axle seals (the "Axle Defect") which in turn cause grease to contaminate the brake pads and rotors equipped in Defendant's RVs containing Lippert axles and components ("Class Vehicles").

2.      The Axle Defect predisposes the Class Vehicles to sudden and catastrophic brake failure and unstable driving, thereby exposing operators, occupants, and other motorists to unreasonable and substantial safety risks, including a heightened risk of accidents and physical

- 1 -

injury.

3.      Forest River has long been aware of the Axle Defect due to: public news accounts; complaints made to the National Highway Traffic Safety Administration ("NHTSA"); other publicly-available complaints; and Defendant's own pre-sale durability testing.

4.      Not only did Defendant fail to disclose the Axle Defect and its impact on the intrinsic and resale value of the Class Vehicles, it also actively concealed the Axle Defect from both Plaintiffs and the Class.

5.      Despite Forest River's longstanding knowledge of the Axle Defect, Forest River continued to manufacture, market and distribute RVs with the Axle Defect for many years, to the detriment of consumers. Forest River has not recalled the Class Vehicles to repair the Axle Defect, offered its customers a suitable repair or replacement free of charge, or offered to reimburse customers who have incurred out-of-pocket expenses to repair the Axle Defect.

6.      As a result of Defendant's unfair, deceptive and/or fraudulent business practices, owners and/or lessees of Class Vehicles, including Plaintiffs, have suffered an ascertainable loss of money and/or property and/or loss in value.

7.      Had Plaintiffs and other Class members known about the Axle Defect at the time of purchase or lease, they would not have purchased or leased Class Vehicles or would have paid substantially less for them, and would have avoided the significant out of pocket expense of repairing their Class Vehicles once the latent Axle Defect manifests.

8.      As a result of the Axle Defect and the considerable monetary costs associated with attempting to repair it, Plaintiffs and Class members have suffered injury in fact, incurred damages and have otherwise been harmed by Defendant's conduct.

9.      Accordingly, Plaintiffs bring this action to redress Defendant's violations of

various state consumer protection statutes and the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq*., and to recover for Defendant's breach of express and implied warranties, common law fraud and unjust enrichment.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one Plaintiff and the Defendant are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

11.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant transacts business in this District, maintains its corporate headquarters in this District, is subject to personal jurisdiction in this District, and therefore is deemed to be a citizen of this District. Additionally, Defendant has advertised in this District and has received substantial revenue and profits from its sales and/or leases of Class Vehicles in this District; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

12.     This Court has personal jurisdiction over Defendant because: its corporate headquarters are located in this District; it is registered with the Indiana Secretary of State as a limited liability company entitled to operate in Indiana; it conducts substantial business in the District; a substantial part of the acts and omissions complained of occurred in the District; and it has intentionally and purposefully placed Class Vehicles into the stream of commerce within Indiana and throughout the United States.

## THE PARTIES

### Plaintiff Randy Truitt

13.     Plaintiff Randy Truitt is a citizen of the State of Kansas, and currently resides in Wichita, Kansas.

14.     In approximately April of 2015, Plaintiff Truitt purchased a 2016 Forest River RV, model Cedar Creek Silver Back 29RE, VIN# 4X4FCRE23GS213940 for his use from Trailer and Hitches, Inc., an authorized Forest River dealer located in Augusta, Kansas.

15.     Prior to purchasing the Forest River, Plaintiff reviewed and relied upon the window sticker and information attached to a floor model, which did not disclose or mention the Axle Defect.

16.     In March of 2020, Plaintiff was notified by his mechanic that his axle hubs were leaking grease during a routine inspection

17.     As a result of the defect, Plaintiff was forced to take the RV in for repairs at 1st Choice Trailers in Goddard, Kansas. To remedy the defect, Plaintiff paid out of pocket to have the inner linings, inner drums, and hub surfaces cleaned of grease, and to have new backer plates, brakes, and axle seals installed.

18.     Neither the Defendant, nor any of its agents, dealers or other representatives, informed any Plaintiff of the existence of the Axle Defect prior to purchase. Had Defendant disclosed the Axle Defect to Plaintiffs, Plaintiffs would not have purchased a Class Vehicle and would have avoided the extensive repair costs associated therewith, or would have paid less for the vehicle.

19.     Plaintiff has suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the Axle Defect, including, but not limited to, the out-

of-pocket expenses and loss associated with the Axle Defect and future attempted repairs, as well as the diminished value of the Class Vehicle.

**Plaintiff Lance Kuykendall**

20.     Plaintiff Lance Kuykendall is a citizen of the State of Illinois, and currently resides in Plainfield, Illinois.

21.     In June of 2018, Plaintiff purchased a used 2014 Forest River RV, model Salem Hemisphere Lite, VIN#4X4FSBN21EU074838, from Rick's RV in Joliet, Illinois.

22.     Prior to purchasing the Forest River, Plaintiff reviewed and relied upon a specifications sheet and advertising pamphlet produced by Forest River.

23.     When Plaintiff began using the RV in the summer of 2018, he immediately noticed that the axle seals heavily leaked grease, resulting in the brake pads wearing prematurely from the excessive lubrication, and excessive heat scorching the bearings.

24.     In response to this substantial damage, Plaintiff contacted the dealership, but was rejected warranty coverage, and was told that Forest River would not reimburse him for any damages resulting from the defect.

25.     As a result, Plaintiff was forced to pay for the procurement and installation of four brake backer plate assemblies, brake pads, axle seals, and bearings to make the RV functional.

26.     Despite these repairs, the defect manifested again in the summer of 2019, requiring Plaintiff to pay for these same repairs a second time.

27.     Ultimately, Plaintiff's RV was completely ruined due to the cold welding on his Lippert frame failing, causing it to come apart. Plaintiff was denied warranty coverage after this major defect manifested.

28.     Neither the Defendant, nor any of its agents, dealers or other representatives,

informed any Plaintiff of the existence of the Axle Defect prior to purchase. Had Defendant disclosed the Axle Defect to Plaintiff, Plaintiff would not have purchased a Class Vehicle and would have avoided the extensive repair costs associated therewith, or would have paid less for the vehicle.

29.    Plaintiff has suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the Axle Defect, including, but not limited to, the out-of-pocket expenses and loss associated with the Axle Defect and future attempted repairs, as well as the total loss of the Class Vehicle.

**Plaintiff Carlton Whitmire**

30.    Plaintiff Carlton Whitmire is a citizen of the State of Washington, and currently resides in Wenatchee, Washington.

31.    In or about February of 2017, Plaintiff purchased a 2016 Forest River RV, model Wildcat Maxx, VIN#4X4TWCD21GT015442 from Canopy Country, Ellensburg, Washington.

32.    Prior to purchasing the Forest River RV, Plaintiff reviewed and relied upon the design of a floor model, which did not disclose or mention the Axle Defect.

33.    In or about October of 2019, with approximately 2,500 miles on the RV, Plaintiff's mechanic reported to him that his axle seals were heavily leaking grease, and that his wheel bearings were functionally useless.

34.    In or about November of 2019, Plaintiff's wife e-mailed Forest River complaining about the Axle Defect, and requesting warranty coverage. Forest River failed to respond.

35.    Neither the Defendant, nor any of its agents, dealers or other representatives, informed any Plaintiff of the existence of the Axle Defect prior to purchase. Had Defendant disclosed the Axle Defect to Plaintiff, Plaintiff would not have purchased a Class Vehicle and

would have avoided the extensive repair costs associated therewith, or would have paid less for the vehicle.

36.     Plaintiff has suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the Axle Defect, including, but not limited to, the out-of-pocket expenses and loss associated with the Axle Defect and future attempted repairs, as well as the diminished value of the Class Vehicle.

**Plaintiff David Trupp**

37.     Plaintiff David Trupp is a citizen of the State of Nevada, and currently resides in Henderson, Nevada.

38.     In March of 2017, Plaintiff purchased a 2017 Forest River RV, model 27KFDX Shockwave, VIN#4X4TSHD20HC003759 from Camping World in Las Vegas, Nevada.

39.     In August of 2017, Plaintiff first noticed that his brakes were failing due to grease contamination resulting from the axle defect. He contacted the dealership but was denied warranty coverage for the necessary repairs.

40.     To remedy the issue, Plaintiff enlisted the help of a mechanic, and bought and replaced the axle seals himself. However, despite this repair, the issue continued.

41.     Plaintiff has had to replace his all of his axle seals six times in the last two years. The problem reoccurs so often, that he makes sure to keep a pair of seals in his truck at all times.

42.     As a result of the Axle Defect, Plaintiff's brakes constantly fail while the RV is in-use.

43.     In July 2020, the Axle Defect caused a major brake failure while traveling at a low speed downhill.

44.     After the RV brakes failed, Plaintiff's truck's brakes caught fire while driving due

- 7 -

to the increased strain. Plaintiff was forced to pull over to allow the tires to cool down, before proceeding cautiously to a safe parking location.

45.      As a result of this damage, Plaintiff had to stop at a Ram dealership in Rexburg, Idaho to have all four brake pads and rotors replaced on his truck.

46.      Neither the Defendant, nor any of its agents, dealers or other representatives, informed any Plaintiff of the existence of the Axle Defect prior to purchase. Had Defendant disclosed the Axle Defect to Plaintiff, Plaintiff would not have purchased a Class Vehicle and would have avoided the extensive repair costs associated therewith, or would have paid less for the vehicle.

47.      Plaintiff has suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the Axle Defect, including, but not limited to, the out-of-pocket expenses and loss associated with the Axle Defect and future attempted repairs, as well as the diminished value of the Class Vehicle.

**Plaintiff Kevin Herinckx**

48.      Plaintiff Kevin Herinckx is a citizen of the State of Oregon, and currently resides in Banks, Oregon.

49.      In December of 2016, Plaintiff purchased a 2017 Forest River RV, model 2715 Stealth, VIN# C016747, from Curtis Trailers, in Aloha, Oregon.

50.      Prior to purchasing the Forest River, Plaintiff reviewed and relied upon the window sticker, which did not disclose or mention the Axle Defect.

51.      In December of 2017, Plaintiff first noticed that his brakes were routinely failing. After paying for Curtis Trailers to take apart and diagnose the problems with the brakes, which was unable to diagnose and repair the Axle Defect, Plaintiff continued driving the RV until the

condition of the brakes became intolerable on or about June of 2018.

52.     Plaintiff then investigated the issue himself, he removed the axle hubs and found substantial grease contamination and significant damage to the brake drums and brake pads. Due to the excessive greasing, only one brake pad was functional.

53.     Upon finding this damage, Plaintiff contacted Forest River in July of 2018, who declined to provide any warranty coverage. When Plaintiff contacted the axle manufacturer, Lippert Components, Lippert sent new backing plates but refused to pay for labor.

54.     As a result, Plaintiff had to repair the RV himself, buying the necessary components, including new axle hubs, brake drums, and brake pads, himself.

55.     Despite these extensive repairs, the defect manifested again in October of 2020, requiring Plaintiff to again buy and install new backing plates.

56.     Neither the Defendant, nor any of its agents, dealers or other representatives, informed any Plaintiff of the existence of the Axle Defect prior to purchase. Had Defendant disclosed the Axle Defect to Plaintiff, Plaintiff would not have purchased a Class Vehicle and would have avoided the extensive repair costs associated therewith, or would have paid less for the vehicle.

57.     Plaintiff has suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the Axle Defect, including, but not limited to, the out-of-pocket expenses and loss associated with the Axle Defect and future attempted repairs, as well as the diminished value of the Class Vehicle.

**Plaintiff Fred Smith**

58.     Plaintiff Fred Smith is a citizen of the State of California, and currently resides in Blythe, California.

59.     In or about February of 2019, Plaintiff decided to buy an RV, and researched the best makes and models from his home in California, and by looking at floor models including their window stickers at a California RV trade show.

60.     Plaintiff decided to purchase a 2018 Forest River RV, model Stealth Toyhauler, VIN#4X4TSFE23JE018446 from Sunshine RV in Lake Havasu City, Arizona, due to Sunshine RV's competitive price and proximity to his home in Southern California.

61.     Prior to purchasing the Forest River, Plaintiff reviewed and relied upon and information furnished by Forest River at an RV Trade Show in Pomona, California, neither of which disclosed or mentioned the Axle Defect.

62.     In October of 2020, with less than 10,000 miles on the odometer, Plaintiff first noticed that his brakes were squealing loudly, and that grease was leaking heavily from the axle.

63.     As a result, Plaintiff had to pay for his brakes to be rebuilt and replaced at RV Automotive in Fontana, California.

64.     Neither the Defendant, nor any of its agents, dealers or other representatives, informed any Plaintiff of the existence of the Axle Defect prior to purchase. Had Defendant disclosed the Axle Defect to Plaintiff, Plaintiff would not have purchased a Class Vehicle and would have avoided the extensive repair costs associated therewith, or would have paid less for the vehicle.

65.     Plaintiff has suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the Axle Defect, including, but not limited to, the out-of-pocket expenses and loss associated with the Axle Defect and future attempted repairs, as well as the diminished value of the Class Vehicle.

**Defendant**

66.    Defendant Forest River, Inc., is a limited liability company registered to do business in Indiana with its principal place of business located at 900 County Road 1, Elkhart, IN, 46514, USA.[1]

67.    Forest River, Inc., is a domestic for-profit corporation doing business within the United States that designs, manufactures, distributes, sells and warrants recreational vehicles, including the Class Vehicles.

68.    On or about June 28, 2005, Berkshire Hathaway, Inc., acquired Forest River,[2] claiming that "Pete [Siegel, Forest River's owner] and Berkshire are made for each other."[3]

69.    Upon information and belief, Defendant also develops the owner's manuals, window stickers, warranty booklets, specification sheets, website information, advertising pamphlets and information included in the maintenance recommendations and/or schedules for Class Vehicles.

70.    Defendant engages in continuous and substantial business throughout the United States, including in Indiana.

**TOLLING OF STATUTES OF LIMITATION**

71.    Any applicable statute(s) of limitations has been tolled by Defendant's knowing and active concealment and denial of the facts alleged herein. Plaintiffs and members of the Class could not have reasonably discovered the true, latent defective nature of the Axle Defect within the Class Vehicles until shortly before this class action litigation was commenced.

---

[1] https://bsd.sos.in.gov/PublicBusinessSearch/BusinessFilings (search term: "Forest River") (last visited Nov. 15, 2020).
[2] Berkshire Hathaway's 2005 Annual Report, *available at* https://www.berkshirehathaway.com/2005arn/2005ar.pdf (last accessed on Nov. 15, 2020).
[3] *Id.*

72.     Defendant was and remains under a continuing duty to disclose to Plaintiffs and members of the Class the true character, quality and nature of the Class Vehicles and the axles installed in them, that Axle Defect presents substantial safety risks, as well as the fact that the Axle Defect will require costly repairs and diminishes the resale value of the Class Vehicles. As a result of Defendant's active concealment of the Axle Defect, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## FACTUAL ALLEGATIONS

**A.**   **The Axle Defect within the Class Vehicles.**

73.     In approximately 1996, Forest River began designing and manufacturing recreational vehicles ("RVs") for sale to consumers.

74.     Forest River offers at least 27 different lines of RVs: Aurora, Berkshire, Cardinal, Cedar Creek, Cherokee, Flagstaff, Forester, FR3, Georgetown, Ibex, Impression, Independence Trail, No Boundaries, Ozark, Riverstone, Rockwood, R-Pod, Salem, Sonoma, Stealth, Sunseeker, Surveyor, Vengeance, Vibe, Wildcat. Wildwood, and XLR.

75.     Forest River markets its vehicles as "at the forefront of the industry" claiming "[a]t Forest River we understand that the quality and dependability of our products is of the utmost importance."[4]

76.     Defendant stated on their website that "[w]ith production capacity of a wide range and huge volume of products, Forest River, Inc. is able to fulfill its customers' orders promptly without cutting corners or rushing through production procedures. Whether it is RV, buses, pontoons park models or cargo trailers, each product undergoes an iterative design process with

---

[4] https://forestriverinc.com/rvs/our-story (last visited Nov. 15, 2020).

standard specifications being met and adhered to rigorously."[5]

77.    Upon information and belief, at all times relevant hereto, Defendant equipped its RVs with axles manufactured by Lippert Components. Reproduced below is a diagram of a Lippert trailer brake and hub housing, as well as, a picture of the assembled axle housing attached to the suspension.



---



78.     Lippert produces these axles through a process which includes fabricating the component parts, finishing and treating the axle shaft, and installing the axle seals.

79.     These completed axles are then delivered to the Defendant, where they are used as a component part in Forest River RVs, including the Class Vehicles.

80.     The Lippert Components axles Defendant installs in its RVs contain a defect in both the axles and axle seals, which causes the axles to both become unstable during operation and to leak grease that contaminates the brake pads and rotors equipped in Class Vehicles. The Defect directly impacts the ability of the Class Vehicle and tow vehicle to stop safely and to safely control the vehicle.

81.     SKF Group, a leading bearing and seal manufacturing company, has published industry standards for the proper installation of seals on vehicle axles. The guide indicates that proper installation depends on three conditions: 1. Condition of the shaft; 2. Condition of the bore; and 3. Using the proper techniques for seal installation. *See* SKF Group, "Automotive Seals Self-Study Guide: Expanding your knowledge of seals and related components" (rev.

12/09) ("SKF Guide"), at p. 27.

82.    Before the axle seals are installed onto the axle, the SFK Guide recommends several procedures to ensure that the axle seal will remain affixed to the axle itself, as to prevent any grease leakage.

83.    Because conventional machining can produce invisible "spiral marks, called machine lead" on the surface of the axle, the SFK Guide recommends "plunge grinding" as the appropriate method for "removing machine lead and assuring proper shaft finish." Without this plunge griding, the machine lead "will auger or pump lubricant out of the assembly [causing] leakage and lip damage, especially at higher speeds." *Id.* at p. 28.

84.    Additionally, SKF, like most all seal manufacturers suggests a heat-treated shaft finish "between 10 to 20 micro inches", approximately .0003 to .0005 millimeters, in order to avoid grease leakage and avoid grease contamination.

85.    In contrast to the best practices outlined in the SFK Guide, Lippert's axle shafts suffer from a defect in materials and/or workmanship, because Lippert failed to plunge grind the axle shafts to an adequate or commercially reasonable finish. Lippert does not heat treat the shaft, and specifies a finish of only 63 micro inches (.0016 millimeters) or less.

86.    Lippert asserts its specifications are adequate because trailer hubs are, in its view, low speed, purportedly allowing Lippert to deviate from commercially reasonable specifications and industry standards. As the experiences of Plaintiffs and Class members demonstrate, however, Lippert's manufacturing failure causes grease to leak through the axle seals, contaminating brake pads and rotors in RVs Defendant and other manufacturers equipped with Lippert axles.

87.    As Lippert itself recognizes, "[i]f grease contaminates the brakes, there will be

diminished braking capability[,]"[6] a condition that may result in catastrophic brake failure and accidents. The grease contamination the Axle Defect causes in brake pads and rotors thus poses an unreasonable and substantial safety risk to Vehicle operators and occupants, and other motorists, as the experiences of Plaintiffs and other Class members reflect.

88.    As a result of the Axle Defect, Class Vehicles are unreasonably dangerous and unsuited for the ordinary and intended purpose of providing safe and reliable transportation.

**B.    <u>Defendant's Knowledge of the Axle Defect.</u>**

89.    At all times relevant to this Complaint, Defendant was well aware of the problems with the axles, brake pads and rotors it equipped in Class Vehicles because Defendant is an experienced designer and manufacturer of recreational vehicles.

90.    As an experienced manufacturer, Defendant conducts testing, including pre-sale durability testing, on incoming components, including axles, to verify that the parts are free from defects and meet Defendant's specifications.

91.    Defendant represents its testing process as robust, claiming "random units from each of our brands are subjected to rigorous testing at our 20,000 square foot pre-delivery inspection (PDI) building on top of the inspections that all units undergo as they are being built. Units selected to go through PDI are checked for issues in electrical, plumbing, LP system, function, cosmetic, codes and standards, rain bay, and other miscellaneous tests. This process provides our plants daily feedback to ensure every unit being built meets the high quality standards."[7]

---

[6] Lippert Component's Axle Grease/Brake Contamination Fact Sheet, available at https://lci-support-doc.s3.amazonaws.com/technical-information-sheets/axles-and-suspension/ccd_0001671.pdf (last visited Nov. 15, 2020).

[7] https://forestriverinc.com/rvs/our-story (last visited Nov. 15, 2020).

92.    Through these quality control measures, Defendant knew or should have known that the axles in the Class Vehicles were defective.

93.    Buyers, lessees, and other owners of the Class Vehicles were without access to the information concealed by Defendant as described herein, and therefore reasonably relied on Defendant's representations and warranties regarding the quality, durability, and other material characteristics of Class Vehicles. Had these buyers and lessees known of the Defect and the potential harm it poses, they would have taken steps to avoid that harm and/or would have paid less for the Class Vehicles than the amounts they actually paid, or would not have purchased the Class Vehicles at all.

94.    Despite its knowledge of the Axle Defect, Defendant failed to either notify Class members of the nature and extent of the problems with the Class Vehicles or provide an adequate remedy.

95.    In addition, many consumers have complained to both the NHTSA and in other public fora about the Axle Defect, as discussed *infra.*

**C.    Complaints by Other Class Members.**

96.    Plaintiffs' experiences are by no means isolated or outlying occurrences. Indeed, the internet is replete with examples of news articles and other websites with accounts of the exact same Axle Defect within the Class Vehicles.

97.    Moreover, the Office of Defects Investigation within NHTSA conducts defect investigations and administers safety recalls to support the NHTSA's mission to improve safety on the Nation's highways.[8] All vehicle manufacturers, including Forest River, are legally

---

[8] *See* https://www-odi.nhtsa.dot.gov/recalls/recallprocess.cfm (last visited Nov. 15, 2020). Indeed, vehicle manufacturers are required by law to report any potential safety defects to the United States government.

obligated to routinely monitor and analyze NHTSA complaints in order to determine whether vehicles or automotive components should be recalled due to safety concerns, and Defendant thus has knowledge of any and all NHTSA complaints.

98.    A sampling of Class member complaints submitted to NHTSA regarding Forest River RVs, many of which reference information provided to the Defendant about this issue its plaguing Class vehicles, makes clear Defendant is aware of the Axle Defect.

99.    These publicly-available complaints filed with NHTSA as early as May of 2016,[9] evidence Defendant's knowledge of the Axle Defect and Class Members' negative experiences with Class Vehicles due to the Defect:

> **Consumer No. 1:**
>
> ON DECEMBER 31 WE WERE RETURNING FROM A TRIP AND WERE APPROXIMATELY 30 MINUTES FROM OUR HOME WE WERE FLAGGED DOWN BY A MOTORIST AT AN INTERSECTION HE INDICATED THAT SMOKE AND OIL WERE BLOWING OUT OF OUR DRIVER SIDE REAR AXLE ON OUR 5TH WHEEL. WE FOUND A SAFE PLACE TO PULL OVER AND SAW THE WHEEL HUB CAP WAS MISSING AND GREASE WAS COMING OUT OF THE WHEEL HUB CREATING A LOT OF SMOKE AND HEAT. YOU COULD SMELL THE GREASE BURNING INSIDE AND OUTSIDE THE RV. … WE HAVE NO DESIRE TO EVER TAKE THIS RV AGAIN. IT IS UNSAFE AND WE WILL NOT PUT OUR LIVES IN JEOPARDY. …FOREST RIVER HAD THIS UNIT TOWED TO LIBERTY RV TO DO REPAIRS "AGAIN". THIS IS NOT A TRUSTWORTHY UNIT EVEN WITH "THEIR REPAIRS". THEY HAD SAID, ON THE PRIOR INCIDENT, THAT THEY REPAIRED THESE AXLES BUT THEY FAILED US AGAIN. THIS UNIT IS NOT SAFE ON THE ROAD FOR US OR FOR OTHER MOTORIST. WE HAVE INDICATED TO FOREST RIVER ON NUMEROUS OCCASIONS THAT WE DO NOT FEEL SAFE TOWING THIS VEHICLE AFTER LOSING THE

---

[9] Posted by consumer in Olathe, Kansas on May 26, 2016 at https://www-odi.nhtsa.dot.gov/VehicleComplaint/ (last visited Nov. 15, 2020) (NHTSA ID Number 10871076).

BRAKES AND THE AXLES TWICE![10]

**Consumer No. 2:**

WHILE DRIVING ON I-75 NORTH OF KNOXVILLE, TN I EXPERIENCED A TIRE FAILURE ON THE RIGHT REAR AXLE WHICH HAD 1 PREVIOUS BLOWOUT BOTH ON THE INSIDE/BACK OF THE TIRE ( A TOTAL OF 3 BLOWOUTS ON THE REAR HUB AND 1 BLOWOUT ON THE FRONT HUB OF THE CURB/RIGHT SIDE OF THE 5TH WHEEL. TELE CONVERSATIONS WITH FOREST RIVER NETTED NO HELP OR DESIRE TO FURTHER INQUIRE AS TO THE CAUSE OF 4 TIRE FAILURES ON THE SAME SIDE OF THE 5TH WHEEL WHICH HAS LESS THAN 4K MILES. [11]

**Consumer No. 3:**

3 BRAKES HAD DAMAGED GREASE SEALS. GREASE LEAKED AND COMPROMISED THE BRAKE SHOE FRICTION. REMAINING BRAKE USED UP ALL FRICTION MATERIAL IN LESS THAN 4,000 MILES OF DRIVING, RESULTING IN NO BRAKING CAPABILITIES. THE RESULT WAS A NEAR COLLISION. I WAS TRAVELING 45 MPH ON US101 NEAR SANTA BARBARA IN A CONSTRUCTION ZONE. ANOTHER CAR ATTEMPTED TO MERGE INTO THE SPACE MY TOW VEHICLE WAS OCCUPYING. I BRAKED HARD AND THE TRAILER, WITH NO BRAKING CAPACITY, TRIED TO PASS MY TOW VEHICLE IN HEAVY TRAFFIC WITH NO SHOULDERS AVAILABLE.[12]

**Consumer No. 4:**

THE CONTACT OWNS A 2018 FOREST RIVER VIBE. WHILE TRAVELING 65 MPH, THE CONTACT AND HER HUSBAND WERE ALERTED BY ANOTHER MOTORIST THAT THERE WAS SMOKE COMING FROM THEIR VEHICLE. THE CONTACT'S HUSBAND PULLED THE TRAILER OVER AND DISCOVERED THAT THE REAR PASSENGER SIDE WHEEL AXLE WAS IN FLAMES. THE CONTACT'S HUSBAND WAS ABLE TO EXTINGUISH THE FIRE WITH WATER.

---

[10] *Id.*

[11] Posted by consumer in Evans, Georgia on May 31, 2016 at *id.* (last visited Nov. 15, 2020) (NHTSA ID Number 10871637).

[12] Posted by consumer in Northridge, California on June 17, 2020 at *id.* (NHTSA ID Number 11329331).

HOWEVER, AS THEY BEGAN TO PULL OFF THE EXIT, THE REAR PASSENGER SIDE TIRE DETACHED FROM THE VEHICLE. THE CONTACT LINKED NHTSA CAMPAIGN NUMBER: 18V624000 (SUSPENSION) WITH THE FAILURE. THE CONTACT SPOKE WITH AN INDEPENDENT MECHANIC AND WAS INFORMED TO CALL FOREST RIVER. [13]

**Consumer No. 5:**

IN ARDMORE, OKLAHOMA WHEN WE STOPPED FOR FUEL IT WAS BROUGHT TO OUR ATTENTION BY ANOTHER MOTORIST THAT GREASE WAS LEAKING FROM ALL FOUR HUBS OF THE TWO AXLES ON OUR 5TH WHEEL. AFTER STAYING IN ARDMORE FOR TWO DAYS AND NOT BEING ABLE TO GET THE REPAIRS WE NEEDED WE HAD TO DRIVE TO A SERVICE FACILITY IN DENTON, TX WHERE IT WAS DETERMINED THE BRAKES WERE BURNED OFF OF ALL FOUR WHEELS AND THIS HAD CAUSED THE AXLES TO OVERHEAT AND FORCED ALL THE GREASE OUT OF THE HUBS AND IT HAD BURNED OFF ALL THE BRAKE WIRING AS WELL. AFTER PARTS WERE OBTAINED FROM DALLAS, TX THE BRAKES SHOES WERE ALL REPLACED, NEW BRAKE WIRING INSTALLED AND AXELS REPACKED. [14]

**Consumer No. 6:**

THE CONTACT OWNS A 2016 FOREST RIVER FORESTER. WHILE DRIVING APPROXIMATELY 35 MPH AND ATTEMPTING TO STOP, THE BRAKE PEDAL TRAVELED TO THE FLOORBOARD WHEN IT WAS DEPRESSED. THE CONTACT HAD TO PUMP THE BRAKE PEDAL UNTIL THE VEHICLE STOPPED. THE CONTACT STATED THAT THE RV PRESENTED THE FAILURE FOR APPROXIMATELY ONE YEAR AND FOUR MONTHS. THE RV WAS TAKEN TO FIELDS MOTORCARS (4141 N FLORIDA AVE, LAKELAND, FL 33805) WHERE THEY CHANGED THE BRAKE FLUID AND BLED THE BRAKE LINES; HOWEVER, THE FAILURE

---

[13] Posted by consumer in Powhatan, Virginia on Dec. 4, 2019 at *id.* (NHTSA ID Number 11286944).

[14] Posted by consumer in Olathe, Kansas on on May 26, 2016 at *id.* (NHTSA ID Number: 10871037).

RECURRED.[15]

100.    In addition, many consumers have complained about the Axle Defect at a number

of third-party websites, with a small sample of such complaints below:

**Consumer No. 7:**

I have a 2014 [Forest River] Columbus and just had this issue. The brakes were not what I felt they should be for some time. My dealer did the inspection and they found grease in the drums along with bad wires.[16]

**Consumer No. 8:**

If anyone is having any problems with pulsating brakes or brakes locking up on trailers with Lippert Components and braking systems, ccheck and see if your wheel bearing seals are leaking onto the braking system. My 2 month old [Forest River] trailer with less than a 1000 miles is at the dealership for the third time for faulty, pulsating brakes and now they are locking up on wet roadways. I have contacted Lippert right before Thanksgiving and waiting for a response. This condition is a huge safety issue and needs corrected. So if your having any brake issues similar to, mine. Check your brakes for grease.[17]

**Consumer No. 9:**

If it's Lippert, look for trouble. I have pulled three wheels off checking break shoes and wheel bearings, and on two of the wheels pulled the outer bearing race was turning in the hub. I purchased the trailer in Aug. 2012, this is the first time I have checked brake shoes and bearings, and Lippert said I was late in checking, (only 6 mths). The 1st wheel I pulled had a leaking seal and small amount of grease on brake shoe. My warranty was out in Aug. 2013.[18]

---

[15] Posted by consumer in Valrico, Florida on April 17, 2019 at *id.* (NHTSA ID Number: 11196973).

[16] Posted by *lumpy75* on October, 15, 2014 at RVForums, http://www.rvforum.net/SMF_forum/index.php/topic,37.0/prev_next,prev.html (last visited Nov. 15, 2020)

[17] Posted by *snapper* on November 19, 2013 at Forest River Forums, https://www.forestriverforums.com/forums/f219/grease-grease-and-more-grease-51528.html (last visited Nov. 15, 2020).

[18] Posted by *Gee_Whiz* on March 10, 2014 at Forest River Forums, https://www.forestriverforums.com/forums/f219/grease-grease-and-more-grease-51528.html

**Consumer No. 10:**

We lost a wheel off of our 2012 Forest River Puma a month ago. This camper has very few miles. We have never gone more than 300 miles from home and we couldn't use the camper two years at all due to health issues. We did have the black grease in the wheel bearings. The wheel bearings closest to the spindle nuts were bad on all four wheels one failing so bad we lost the wheel, hub and all, the wheel coming off damaged the back end of the camper. I would recommend if you have Lippert axles get the bearings replaced/repacked with quality wheel bearing grease.[19]

101.    In addition to these many consumer complaints, Defendant had knowledge of this defect due to media reporting, and Lippert's own public statements.

102.    On February 17, 2017, Lippert's Vice President of RV Sales responded to reports of Lippert axle seals failing saying "that his company is, indeed, aware of the problem and aware of the conversation among [owners of RVs with Lippert axles]."[20]

103.    This statement was covered by RV reporting websites including RV Daily News[21] and RVHeadlines.com.[22]

104.    Additionally, the statement incited voluminous discussion on prominent RV

---

(last visited Nov. 15, 2020).

[19] Comment by *alanannerosa_farm* on August 19, 2017 at https://www.youtube.com/watch?v=tjrCK3DcQfI (last visited Nov. 15, 2020).

[20] Greg Gerber, *Lippert Addresses Reports of Leaking RV Axles*, RV Daily Report (Feb. 17, 2017), available at https://web.archive.org/web/20181005211802 (last visited Oct. 21, 2020) (RV Daily Report is no longer in operation, the cited hyperlink is to an archive of the website as of Oct. 5, 2018).

[21] *Id.*

[22] RV Headlines, available at https://rvheadlines.com/2017/02/17/lippert-addresses-reports-of-leaking-rv-axles/ (last visited Nov. 15, 2020).

forum websites including RV-Dreams,[23] My Grand RV,[24] and Jayco Owners Forums.[25]

**D.    Defendant's Warranty Practices**

105.    Despite longstanding knowledge of the Axle Defect as set forth above, Defendant refuses to provide warranty coverage for the repairs the Axle Defect necessitates.

106.    Defendant provided to Plaintiffs and every Class member a "Limited Warranty" that covers Class Vehicles for a period of one year against "substantial defects in materials and workmanship attributable to [Defendant]."[26]

107.    Nevertheless, when Class members seek warranty coverage for the Axle Defect, even within the warranty period, Defendant often fails to respond or denies warranty coverage.

108.    Moreover, some Class Vehicles manifest the Defect just outside Defendant's one-year warranty period. But the mileage and temporal limitations Defendant imposes on its Base Limited Warranty are unconscionable and unenforceable.

109.    Defendant provides the Limited Warranty to buyers after a purchase is complete. Buyers like Plaintiffs and Class members also lack pre-sale knowledge of the Axle Defect or the ability to bargain as to the terms of the Defendant's warranty. Accordingly, the limitations Defendant imposes on the Limited Warranty—and its efforts to disclaim any implied warranties—are procedurally unconscionable because there was unequal bargaining power between Defendant and Plaintiffs and the other Class members, as, at the time of purchase,

---

[23] RV Dreams Forums, "https://rv-dreams.activeboard.com/t63251290/lippert-addresses-reports-of-leaking-rv-axles/" (last visited Nov. 15, 2020).

[24] My Grand RV Forums, "https://www.mygrandrv.com/forum/showthread.php/10235-Lippert-addresses-reports-of-leaking-RV-axles/page3" (last visited Nov. 15, 2020).

[25] Jayco RV Owners Forums, "https://www.jaycoowners.com/forums/f6/wheel-bearings-58020-2.html" } (last visited Nov. 15, 2020).

[26] Forest River Warranty Information, *available at* https://www.forestriverinc.com/downloads/TowableWarranty.pdf (last visited Nov. 15, 2020).

Plaintiffs and the other Class members had no other options for purchasing from Defendant alternative warranty coverage for Class Vehicles.

110.    The limitations on the warranties, including the durational limits Defendant attempts to impose on its Limited Warranty and its efforts to disclaim the implied warranty of merchantability, also are substantively unconscionable. Defendant knew Class Vehicles suffered from the Axle Defect and would continue to pose safety risks after the Base Limited Warranty purportedly expired, yet failed to disclose the Defect to Plaintiffs and the other Class members while continuing to market Class Vehicles as safe and reliable. Defendant's enforcement of those limitations and disclaimers thus is harsh and shocks the conscience.

111.    Defendant's efforts to evade its warranty obligations with respect to the known Axle Defect, coupled with its refusal to cover the Defect if it manifests outside the warranty's stated term, deprives Plaintiffs and Class members of the benefit of their bargain, forcing them to pay out of pocket to repair a defect present in Class Vehicles at the time of purchase by replacing each and every Class Vehicle axle and seal.

## CLASS ACTION ALLEGATIONS

112.    Plaintiffs bring this action on their own behalf, and on behalf of the following Class pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the Class consists of the following:

**Nationwide Class:**

All persons or entities in the United States who are current or former owners and/or lessees of a Class Vehicle.

And/or, in the alternative,

**California Class:**

All persons or entities in California who are current or former owners and/or lessees of a

Class Vehicle.

and/or, in the alternative,

### Kansas Class:

All persons or entities in Kansas who are current or former owners and/or lessees of a Class Vehicle.

and/or, in the alternative,

### Illinois Class:

All persons or entities in Illinois who are current or former owners and/or lessees of a Class Vehicle.

and/or, in the alternative,

### Nevada Class:

All persons or entities in Nevada who are current or former owners and/or lessees of a Class Vehicle.

and/or, in the alternative,

### Washington Class:

All persons or entities in Washington who are current or former owners and/or lessees of a Class Vehicle.

and/or, in the alternative,

### Oregon Class:

All persons or entities in Oregon who are current or former owners and/or lessees of a Class Vehicle.

113.    Together, the Nationwide Class, California Class, Kansas Class, Illinois Class, Nevada Class, Washington Class, and/or Oregon Class will be referred to collectively as the "Class." Excluded from the Class are Defendant, its affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change or expand the Class definition.

114. <u>Numerosity</u>: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe that hundreds or thousands of Class Vehicles have been sold and/or leased.

115. <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

    a.   whether the axles in the Class Vehicles are predisposed to the Axle Defect;

    b.   whether Defendant knowingly failed to disclose the existence and cause of the Axle Defect in Class Vehicles;

    c.   whether Defendant's conduct violates the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*;

    d.   whether Defendant's conduct violates the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200;

    e.   whether Defendant's conduct violates the California Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1797 *et seq.*;

    f.   whether Defendant's conduct violates the Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24-5-0.5-0.1 *et seq.*;

    g.   whether Defendant's conduct violates the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*;

    h.   whether Defendant's conduct constitutes a breach of express warranty;

      i.   whether Defendant's conduct constitutes a breach of implied warranty;

      j.   whether Defendant's conduct constitutes common law fraud;

      k.   whether Defendant's conduct constitutes unjust enrichment; and

      l.   whether Plaintiffs and Class members are entitled to monetary damages and/or other remedies and, if so, the nature of any such relief.

116.   <u>Typicality</u>: All of the Plaintiffs' claims are typical of the claims of the Class since each Plaintiff purchased a Class Vehicle with the Axle Defect, as did each member of the Class. Furthermore, Plaintiffs and all members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendant's wrongful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

117.   <u>Adequacy</u>: Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Class that they seeks to represent, they have retained counsel competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

118.   <u>Superiority</u>: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class to individually and effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for

inconsistent or contradictory judgments. Individualized litigation also increases the delay and

expense to all parties, and to the court system, presented by the complex legal and factual issues

of the case. By contrast, the class action device presents far fewer management difficulties, and

provides the benefits of single adjudication, economy of scale, and comprehensive supervision

by a single court. Upon information and belief, members of the Class can be readily identified

and notified based on, *inter alia*, Defendant's vehicle identification numbers (VINs), warranty

claims, registration records, and the database of complaints.

119.    Defendant has acted, and refused to act, on grounds generally applicable to the

Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

### VIOLATIONS ALLEGED

### COUNT I
### VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT ("CLRA")
### (Cal. Civ. Code §§ 1750 *et seq.*)
### (On Behalf of the California Class)

120.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as

though fully set forth herein.

121.    Defendant is a "person" as that term is defined in California Civil Code § 1761(c).

122.    Plaintiffs and the Class are "consumers" as that term is defined in California Civil

Code § 1761(d).

123.    Defendant engaged in unfair and deceptive acts in violation of the CLRA by the

practices described above, and by knowingly and intentionally concealing from Plaintiffs and

Class members the Axle Defect. These acts and practices violate, at a minimum, the following

provisions of the CLRA, California Civil Code § 1770:

> (a)(5)   Representing that goods or services have sponsorships,
> characteristics, uses, benefits or quantities which they do not have, or that

a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;

(a)(7)   Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(a)(9)   Advertising goods and services with the intent not to sell them as advertised;

(a)(14) represents that a transaction confers or involves rights, remedies, or obligations which it does not have or involve; and

(a)(16) represents that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

124.    Defendant's unfair or deceptive acts or practices occurred repeatedly in Defendant's trade or business and were capable of deceiving a substantial portion of the purchasing public.

125.    Defendant knew that the Class Vehicles were defective since they were susceptible to the Axle Defect and thus prone to failing for their essential purpose of safe travel, and would become useless as a result of reasonable and foreseeable use by consumers.

126.    Defendant was under a duty to Plaintiffs and Class members to disclose the defective nature of the Class Vehicles because:

> a.    Defendant was in a superior position to know the true state of facts about the Axle Defect within the Class Vehicles;
>
> b.    Plaintiffs and the Class members could not reasonably have been expected to learn or discover that the Class Vehicles contained the Axle Defect and thus were not in accordance with Defendant's advertisements and representations;
>
> c.    Defendant knew that Plaintiffs and the Class members could not reasonably have been expected to learn or discover the Axle Defect within the Class Vehicles; and
>
> d.    Defendant actively concealed and failed to disclose the Axle Defect within the Class Vehicles from Plaintiffs and the Class.

127.    In failing to disclose the Axle Defect within the Class Vehicles at the time of sale, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so.

128.    The facts concealed or not disclosed by Defendant to Plaintiffs and the Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendant's Recreational Vehicles or to pay a lesser price. Had Plaintiffs and the Class known about the Axle Defect within the Class Vehicles, they would not have purchased the RVs or would have paid less for them.

129.    Plaintiffs' and the other Class members' injuries were proximately caused by Defendant's fraudulent and deceptive business practices.

130.    Plaintiffs have provided Defendant with notice of its violations of the CLRA pursuant to Cal. Civ. Code § 1782(a) and currently seek only injunctive relief. After the 30-day notice period expires, Plaintiffs will amend this complaint to seek monetary damages under the CLRA.

131.    Therefore, Plaintiffs and the Class are entitled to equitable relief under the CLRA.

## COUNT II
### VIOLATIONS OF CALIFORNIA UNFAIR COMPETITION LAWS
#### (Cal. Bus. & Prof. Code §§ 17200 *et seq.*)
#### (On Behalf of the California Class)

132.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

133.    The California UCL prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

134.     Defendant has engaged in unfair competition and unfair, unlawful, or fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiffs and Class members the Axle Defect (and the costs and diminished value of the Class Vehicles as a result of Defendant's conduct). Defendant should have disclosed this information because it was in a superior position to know the true facts related to the Axle Defect, and Plaintiffs and Class members could not reasonably be expected to learn or discover the true facts related to the Axle Defect.

135.     These acts and practices have deceived Plaintiffs and are likely to deceive the public. In failing to disclose the Axle Defect and suppressing other material facts from Plaintiffs and Class members, Defendant breached its duties to disclose these facts, violated the UCL, and caused injuries to Plaintiffs and Class members. The omissions and acts of concealment by Defendant pertained to information that was material to Plaintiffs and Class members, as it would have been to all reasonable consumers.

136.     The injuries suffered by Plaintiffs and Class members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiffs and the Class members should have reasonably avoided.

137.     Defendant's acts and practices are unlawful because they violate California Civil Code §§ 1668, 1709, 1710, and 1750 *et seq.*, and California Commercial Code § 2313.

138.     Plaintiffs seek to enjoin further unlawful, unfair and/or fraudulent acts or practices by Defendant, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200.

## **COUNT III**

## BREACH OF EXPRESS WARRANTY PURSUANT TO SONG-BEVERLY CONSUMER
## WARRANTY ACT
### (Cal. Civ. Code §§ 1797 *et seq.*)
### (On Behalf of the California Class)

139.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

140.    Class Vehicles are "consumer goods" under Cal. Civ. Code § 1791(a).

141.    Defendant is and was at all relevant times a "manufacturer" and seller of the Class Vehicles under Cal. Civ. Code § 1791(j).

142.    Plaintiffs and Class members bought or leased Class Vehicles designed, manufactured, warranted, marketed to them, and intended to be purchased or leased by consumers such as them, by Defendant.

143.    Defendant expressly warranted the Class Vehicles against defects, including the Axle Defect, as described above, within the meaning of Cal. Civ. Code §§ 1791.2 and 1793.2.

144.    As described above, the axles installed in the Class Vehicles are defective. The Defect substantially impairs the use, value, and safety of the Class Vehicles to reasonable consumers, including Plaintiffs and Class members.

145.    Defendant knew of the Defect when it expressly warranted the Class Vehicles, wrongfully and fraudulently concealed material facts regarding the Defect, failed to inform Class members that the Class Vehicles had the Defect, and induced Plaintiffs and Class members to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

146.    Defendant is obligated, under the terms of its express warranties and pursuant to Cal. Civ. Code §§ 1793.2 and 1795.4, to effectively and within a reasonable time repair the Defect at no cost to Plaintiffs and Class members.

147.    Defendant breached its express warranties by supplying the Class Vehicles to Plaintiffs and Class members with the Defect, by failing to provide repairs within a reasonable time, and by replacing defective parts with equally defective replacement parts instead of providing a one-time, effective fix.

148.    Defendant breached its express warranties by failing to repair the Class Vehicles under warranty and by failing to provide to Plaintiffs or Class members, as a warranty replacement, a product that conforms to the qualities and characteristics that it promised when it sold the Class Vehicles to Plaintiffs and Class members.

149.    As more fully detailed above, Defendant was provided with appropriate notice and has been on notice of the Defect and of its breach of its express written warranties from various sources, including Plaintiffs.

150.    Plaintiffs have given Defendant a reasonable opportunity to cure its failures with respect to its warranties, and Defendant has failed to do so.

151.    Affording Defendant any further opportunity to cure its breach of written warranties is unnecessary and futile here.

152.    Any express warranties promising to repair and/or correct any defects fail in their essential purposes because the contractual remedy is insufficient to make Plaintiffs and Class members whole and because Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

153.    Accordingly, recovery by the Class is not restricted to any written warranties promising to repair and/or correct defects, and they seek all remedies as allowed by law.

154.    Any attempt by Defendant to limit or disclaim the express warranties in a manner that would exclude coverage of the Defect is unenforceable and void pursuant to Cal. Civ. Code § 1790.1.

155.    As a direct and proximate result of Defendant's breach of its express warranties, Plaintiffs and Class members received goods that have substantially impaired value and have suffered damages in an amount to be determined at trial.

156.    Pursuant to Cal. Civ. Code § 1794 and 1795.4, Plaintiffs and Class members are entitled to incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees.

## COUNT III
## BREACH OF IMPLIED WARRANTY PURSUANT TO SONG-BEVERLY CONSUMER WARRANTY ACT
### (Cal. Civ. Code §§ 1797 *et seq.*)
### (On Behalf of the California Class)

157.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

158.    Defendant's Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

159.    Defendant is a "manufacturer" within the meaning of Cal. Civ. Code § 1791(j).

160.    Plaintiffs and Class members who purchased or leased their Class Vehicles within the State of California are "buyers" and "lessees" within the meaning of Cal. Civ. Code §§ 1791(b) and (h).

161.    Defendant impliedly warranted to Plaintiffs and Class members that its Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792.

162.    Defendant impliedly warranted to Plaintiffs and Class members that it would repair or replace any defective products, including the defective axles.

163.    The propensity of the Defect to cause grease to contaminate vehicle brakes and make the vehicle unstable, endangering occupants and other motorists, renders the Class Vehicles to not be of the quality that a buyer or lessee would reasonably expect, and therefore not merchantable.

164.    The Defect is latent and was present at the time of sale, and therefore the Vehicles were not merchantable at the time of sale/lease because they are unsuited for the ordinary and intended purpose of providing safe and reliable transportation.

165.    In violation of Cal. Civ. Code § 1791.1(a), Defendant breached its implied warranty by selling/leasing Class Vehicles that were defective and refusing to effectively repair the Axle Defect.

166.    The Defect has deprived Plaintiffs and Class members of the benefit of their bargain, and have caused the Class Vehicles to depreciate in value.

167.    Any attempt by Defendant to limit or disclaim the implied warranties in a manner that would exclude coverage of the Defect is unenforceable and void pursuant to Cal. Civ. Code §§ 1790.1, 1792.3, and 1793.

168.    As a result of Defendant 's breach of its implied warranties, Plaintiffs and Class members have been damaged in an amount to be proven at trial and are entitled to incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, pursuant to Cal. Civ. Code §§ 1794 and 1795.4.

**COUNT IV**
**VIOLATION OF KANSAS CONSUMER PROTECTION ACT**
**(Kan. Stat. Ann. § 50-623 *et seq.*)**
**(On Behalf of the Kansas Class)**

169.    Plaintiff incorporates by reference the allegations of all forgoing paragraphs as if

they had been set forth in full herein.

170. Defendants are "suppliers" under the Kansas Consumer Protection Act ("Kansas CPA"), Kan. Stat. Ann. § 50-624(l).

171. Kansas Class members are "consumers," within the meaning of Kan. Stat. Ann. § 50-624(b), who purchased or leased one or more Class Vehicles.

172. The Kansas CPA states "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction," Kan. Stat. Ann. § 50-626(a), and that deceptive acts or practices include: (1) knowingly making representations or with reason to know that "(A) Property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have;" and "(D) property or services are of particular standard, quality, grade, style or model, if they are of another which differs materially from the representation;" "(2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact;" and "(3) the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact." The Kansas CPA also provides that "[n]o supplier shall engage in any unconscionable act or practice in connection with a consumer transaction." Kan. Stat. Ann. § 50-627(a)

173. Defendants engaged in unlawful conduct in violation of the Kansas CPA by making knowing and intentional omissions.

174. Defendant failed to disclose the Axle Defect to Plaintiffs despite knowledge of it as specified in preceding paragraphs. The Axle Defect is also a safety issue, as it results in sudden brake failure, and creates a risk of fire.

175. Defendants' misrepresentations and omissions as set forth in this complaint are material in that they relate to matters that are important to consumers and/or are likely to affect

the purchasing decisions or conduct of consumers, including Plaintiff.

176.    In violation of the Kansas CPA, Defendants employed fraud, deception, false promise, misrepresentation and/or the knowing concealment, suppression or omission of material facts in its sale and advertisement of the Class Vehicles.

177.    Plaintiff and the Class suffered an ascertainable loss as a result of Defendants' unlawful conduct as alleged herein.

178.    Had Plaintiffs known the truth about the vehicle, they would not have purchased the vehicle, or would not have paid as much.

179.    Kansas Class members seek damages, attorneys' fees and all other appropriate relief under the Kansas CPA.

## COUNT V

### VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
### (815 ILCS 505/1 *et seq*. and 720 ILCS 295/1a)
### (Brought on Behalf of the Illinois Class)

180.    Plaintiff incorporates by reference the allegations of all forgoing paragraphs as if they had been set forth in full herein.

181.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact ... in the conduct of trade or commerce ... whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

182.    Defendant willfully violated the Illinois CFA by selling the Class Vehicles

without disclosing the Axle Defect.

183.    Defendants engaged in unlawful conduct in violation of the Kansas CPA by making knowing and intentional omissions.

184.    Defendant failed to disclose the Axle Defect to Plaintiffs despite knowledge of it as specified in preceding paragraphs. The Axle Defect is also a safety issue, as it results in sudden brake failure, and creates a risk of fire.

185.    Defendants' misrepresentations and omissions as set forth in this complaint are material in that they relate to matters that are important to consumers and/or are likely to affect the purchasing decisions or conduct of consumers, including Plaintiff.

186.    In violation of the Illinois CFA, Defendants employed fraud, deception, false promise, misrepresentation and/or the knowing concealment, suppression or omission of material facts in its sale and advertisement of the Class Vehicles.

187.    Plaintiff and the Class suffered an ascertainable loss as a result of Defendants' unlawful conduct as alleged herein.

188.    Had Plaintiff known the truth about the vehicle, he would not have purchased the vehicle, or would not have paid as much.

189.    Plaintiff and the Illinois Class sees damages, attorneys' fees and all other appropriate relief under the Illinois CFA.

## COUNT VI
### VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT (NDTPA)
#### (Brough on Behalf of the Nevada Class)

190.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

191.    The Nevada Deceptive Trade Practices Act ("NDTPA") prohibits "knowingly …

[f]ail[ing] to disclose a material fact in connection with the sale or lease of goods or services." Nev. Rev. Stat. Ann. § 598.0923(2). In particular, the NDTPA protects consumers from deceptive practices like "[a]dvertis[ing] goods or services with intent not to sell or lease them as advertised," "[a]dvertis[ing] goods or services for sale or lease with intent not to supply reasonably expectable public demand," or "[k]nowingly mak[ing a] ... false representation in a transaction." Nev. Rev. Stat. § 598.0915(9), (10), (15).

192.    Defendant willfully violated the NDTPA by selling the Class Vehicles without disclosing the Axle Defect.

193.    Defendants engaged in unlawful conduct in violation of the NDTPA by making knowing and intentional omissions.

194.    Defendant failed to disclose the Axle Defect to Plaintiffs despite knowledge of it as specified in preceding paragraphs. The Axle Defect is also a safety issue, as it results in sudden brake failure, and creates a risk of fire.

195.    Defendants' misrepresentations and omissions as set forth in this complaint are material in that they relate to matters that are important to consumers and/or are likely to affect the purchasing decisions or conduct of consumers, including Plaintiff.

196.    In violation of the NDTPA, Defendants employed fraud, deception, false promise, misrepresentation and/or the knowing concealment, suppression or omission of material facts in its sale and advertisement of the Class Vehicles.

197.    Plaintiff and the Class suffered an ascertainable loss as a result of Defendants' unlawful conduct as alleged herein.

198.    Had Plaintiff known the truth about the vehicle, he would not have purchased the vehicle, or would not have paid as much.

199.    Defendants' failure to produce a merchantable product and to satisfy minimum safety standards were facts solely within Defendants' possession and not readily discoverable by Plaintiffs.

200.    Plaintiffs purchased their RVs primarily for personal, family, or household purposes.

201.    Plaintiffs are entitled to recover damages, restitution, and injunctive relief, together with appropriate penalties, including civil penalties, attorneys' fees, and costs of suit.

**COUNT VII**
**VIOLATIONS OF WASHINGTON CONSUMER PROTECTION ACT ("WCPA")**
**(Wash. Rev. Code § 19.86.010,** *et seq.***)**
**(Brought on Behalf of Washington Class)**

202.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

203.    Defendant's acts and practices, as set forth above, occurred in the conduct of "trade" or "commerce" within the meaning of Wash. Rev. Code § 19.86.010(2).

204.    The WCPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or practices." Wash. Rev. Code § 19.86.020.

205.    Defendant's acts and practices, described herein, are unfair and deceptive in violation of Washington law. By selling defective Class Vehicle with exclusive or superior knowledge of the Axle Defect, and by failing to disclose the Axle Defect or honor warranty claims in good faith, Defendant acted unscrupulously in a manner that is substantially oppressive and injurious to consumers.

206.    Defendant also engaged in unfair and deceptive trade practices in violation of Washington law by promoting the quality and functionality of the Class Vehicles, while willfully failing to disclose and actively concealing the Defect.

- 40 -

207.    Defendant committed the deceptive acts and practices with the intent that consumers, such as Washington Class members, would rely on Defendant's representations and omissions when deciding whether to purchase a Class Vehicle.

208.    Defendant failed to disclose the Axle Defect to Plaintiffs despite knowledge of it as specified in preceding paragraphs. The Axle Defect is also a safety issue, as it results in sudden brake failure, and creates a risk of fire.

209.    Defendants' misrepresentations and omissions as set forth in this complaint are material in that they relate to matters that are important to consumers and/or are likely to affect the purchasing decisions or conduct of consumers, including Plaintiff.

210.    In violation of the NDTPA, Defendants employed fraud, deception, false promise, misrepresentation and/or the knowing concealment, suppression or omission of material facts in its sale and advertisement of the Class Vehicles.

211.    Washington Class members suffered ascertainable loss as a direct and proximate result of Defendant's unfair and deceptive acts and practices. Had Plaintiff Washington Class members known that the Class Vehicles are defective, they would not have purchased a Class Vehicle or would have paid significantly less for one. Among other injuries, Plaintiff and Washington Class members overpaid for their Class Vehicles, and their Class Vehicles suffered a diminution in value.

212.    Defendant's violations of the WCPA present a continuing risk to Plaintiff and Washington Class members, as well as to the general public. Defendant's unlawful acts and practices adversely affect the public interest.

213.    Under Wash. Rev. Code § 19.86.090, Plaintiff and the Washington Class seek an order enjoining Defendant's unfair and deceptive acts and practices, providing for appropriate

monetary relief, including trebled damages, and awarding reasonable attorneys' fees and costs.

214.    In accordance with Wash. Rev. Code § 19.86.095, a copy of this Consolidated Complaint has been served on the Attorney General of Washington.

## COUNT VIII
## VIOLATIONS OF THE OREGON UNLAWFUL TRADE PRACTICES ACT ("Oregon UTPA")
### (OR. REV. STAT. § 646.605, *et seq*)
### (Brought on Behalf of Oregon Class)

215.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

216.    Plaintiff, Oregon Class members, and Defendant are "persons" under Or. Rev. Stat. § 646.605(4).

217.    Class Vehicles are "goods" primarily used for personal, family or household purposes under OR. REV. STAT. § 646.605(6).

218.    Defendant's sale of Class Vehicles constitutes "[t]rade" or "commerce" within the meaning of Or. Rev. Stat. § 646.605(8).

219.    The Oregon UTPA prohibits a person from, in the course of the person's business, doing any of the following: "(e) Represent[ing] that . . . goods . . . have . . . characteristics . . . uses, benefits, . . . or qualities that they do not have; (g) Represent[ing] that . . . goods . . . are of a particular standard [or] quality . . . if they are of another; (i) Advertis[ing] . . . goods or services with intent not to provide them as advertised"; and "(u) engag[ing] in any other unfair or deceptive conduct in trade or commerce." Or. Rev. Stat. § 646.608(1).

220.    In the course of its business, Defendant violated the Oregon UTPA by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability, functionality, performance, of the Class Vehicles, as detailed above. Specifically, in marketing,

offering for sale, and selling the defective Class Vehicles, Defendant engaged in one or more of the following unfair or deceptive acts or practices above as proscribed by the Oregon UTPA. By selling defective Class Vehicle with exclusive or superior knowledge of the Defect, and by failing to disclose the Defect or honor warranty claims in good faith, Defendant breached its ongoing duties to disclose all material facts concerning the Class Vehicles and the Defect, and to refrain from unfair or deceptive acts and practices under the Oregon UTPA.

221.    Defendant willfully violated the NDTPA by selling the Class Vehicles without disclosing the Axle Defect.

222.    Defendant failed to disclose the Axle Defect to Plaintiffs despite knowledge of it as specified in preceding paragraphs. The Axle Defect is also a safety issue, as it results in sudden brake failure, and creates a risk of fire.

223.    Defendants' misrepresentations and omissions as set forth in this complaint are material in that they relate to matters that are important to consumers and/or are likely to affect the purchasing decisions or conduct of consumers, including Plaintiff.

224.    In violation of the NDTPA, Defendants employed fraud, deception, false promise, misrepresentation and/or the knowing concealment, suppression or omission of material facts in its sale and advertisement of the Class Vehicles.

225.    Defendant's concealment of the true characteristics of the Class Vehicles were material to Plaintiff and the Oregon Class. Had they known the truth, Plaintiff and the Oregon Class would not have purchased the Class Vehicles, or would have paid significantly less for them.

226.    Plaintiff and Oregon Class members had no way of discerning the true facts concerning the Defect and the Class Vehicles because such facts were exclusively in Defendant's possession.

227.    Plaintiff and Oregon Class members suffered ascertainable loss as a direct and proximate result of Defendant's unfair and deceptive acts and practices. Among other injuries, Plaintiff and Oregon Class members overpaid for their Class Vehicles, and their Class Vehicles suffered a diminution in value.

228.    Pursuant to Or. Rev. Stat. § 646.638, Plaintiff and the Oregon Class seek an order enjoining Defendant's unlawful acts or practices, awarding damages, treble damages, reasonable attorneys' fees and costs, and any other just and proper relief available under the Oregon UTPA.

**COUNT IX**

**VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT**
**(15 U.S.C. §§ 2301, *et seq.*)**
**(Brought on Behalf of the Nationwide Class)**

229.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

230.    Congress enacted the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*, in response to widespread consumer complaints regarding misleading and deceptive warranties. The Act imposes civil liability on any "warrantor" for failing to comply with any obligation under written and implied warranties. 15 U.S.C. § 2310(d)(1).

231.    The Class Vehicles are consumer products as defined by 15 U.S.C. § 2301(1).

232.    Plaintiffs and Class members are "consumers" as defined by 15 U.S.C. § 2301(3).

233.    Defendant is a warrantor and supplier as defined by 15 U.S.C. § 2301(4) and (5).

234.    Defendant has failed to remedy the Axle Defect, despite its knowledge and notice of said defect in the Class Vehicles.

235.    Defendant expressly warranted that its Class Vehicles would be free of defects.

236.    At the time Defendant issued written warranties for the Class Vehicles, it knew and had notice that the vehicles were susceptible to the Axle Defect, including *inter alia,* (1) damage to the RVs; (2) lowered value of the RVs; and/or (3) unsafe driving conditions for consumers and others on the roadways. Defendant's continued misrepresentations and omissions concerning the Axle Defect, as well as its failure to abide by its own written and implied warranties, are "unfair methods of competition in or affecting commerce, and [are] unfair or deceptive acts or practices in or affecting commerce." Accordingly, its behavior is unlawful under 15 U.S.C. §§ 2310(b), 45(a)(1).

237.    Plaintiffs and Class members seek to recover damages caused as a direct result of Forest River's breach of its written and implied warranties and its deceitful and unlawful conduct. Damages include costs associated with repairing or replacing the Class Vehicles with non-defective vehicles and/or repair or replacement of axles and related components which caused the Axle Defect.

238.    The Magnuson-Moss Warranty Act also provides for "other legal and equitable" relief. 15 U.S.C. § 2310(d)(1). Accordingly, Plaintiffs and Class members seek reformulation of Defendant's written warranty to comport with its obligations under the Act and with consumers' reasonable expectations. Additionally, Plaintiffs seeks to enjoin Defendant from acting unlawfully as further alleged, including discouraging Plaintiffs from seeking all available remedies. The Magnuson-Moss Warranty Act also provides for an award of costs and expenses, including attorneys' fees, to prevailing consumers in the Court's discretion. 15 U.S.C. § 2310(d)(2). Plaintiffs intend to seek such an award as prevailing consumers at the conclusion of the case.

## COUNT X
## BREACH OF EXPRESS WARRANTY

**(On Behalf of the Nationwide Class or, Alternatively, on Behalf of the California Class, the Kansas Class, the Illinois Class, the Nevada Class, the Washington Class, and/or the Oregon Class)**

239.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

240.    Defendant breached its Base Limited Warranty by selling to Plaintiffs and Class members Class Vehicles known to suffer from the Axle Defect, that are not of high quality, and which are unsuited for their ordinary and intended purpose, while refusing to cover the cost of repairs needed to cure the Defect.

241.    As a result of the Defendant's actions, Plaintiffs and Class members have suffered economic damages including but not limited to costly repairs, loss of vehicle use, substantial loss in value and resale value of the vehicles, and other related damage.

242.    Plaintiffs notified Defendant of its breach and attempted to provide it an opportunity to cure the Axle Defect, but Defendant has not responded.

243.    Defendant's attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Defendant's warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the manufacturing and/or material defect. Furthermore, Defendant continues to charge Class members for repairing the defective axles – if it repairs them at all -- when in fact such repairs are actually necessitated because of the known Axle Defect.

244.    The time limits contained in Defendant's warranty period were also unconscionable and inadequate to protect Plaintiffs and members of the Class. Among other things, Plaintiffs and Class members had no meaningful choice in determining these time

limitations, the terms of which unreasonably favored Defendant. A gross disparity in bargaining power existed between Forest River and Class members, and Forest River knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

245.    Plaintiffs and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

**COUNT XI**
**BREACH OF IMPLIED WARRANTY**
**(On Behalf of the Nationwide Class or, Alternatively, on Behalf of the California Class, the Kansas Class, the Illinois Class, the Nevada Class, the Washington Class, and/or the Oregon Class)**

246.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

247.    A warranty that the Class Vehicles were in merchantable condition is implied by law.

248.    These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that there are defects in the installation of Class Vehicles' axles, which are not of high quality, and which fail prematurely and/or fail to function properly.

249.    Defendant was provided notice of these issues by numerous informal and formal complaints filed against it, including the instant Complaint, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

250.    As a direct and proximate result of Defendant's breach of the warranties of

merchantability, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial.

## COUNT XII
## COMMON LAW FRAUD
**(On Behalf of the Nationwide Class or, Alternatively, on Behalf of the California Class, the Kansas Class, the Illinois Class, the Nevada Class, the Washington Class, and/or the Oregon Class)**

251.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

252.    Defendant made material omissions concerning a presently existing or past fact. For example, Defendant did not fully and truthfully disclose to its customers the true nature of the inherent design defect with the Class Vehicles' axles, which was not readily discoverable until after the Vehicles were purchased. As a result, Plaintiffs and the other Class members were fraudulently induced to lease and/or purchase the Class Vehicles with the Axle Defect and all of the resultant problems.

253.    These omissions were made by Defendant with knowledge of their falsity, and with the intent that Plaintiffs and Class members rely upon them.

254.    Plaintiffs and Class members reasonably relied on these omissions, and suffered damages as a result.

## COUNT XIII
## UNJUST ENRICHMENT
**(On Behalf of the Nationwide Class or, Alternatively, on Behalf of the California Class, the Kansas Class, the Illinois Class, the Nevada Class, the Washington Class, and/or the Oregon Class)**

255.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

256.    Plaintiffs and members of the Class conferred a benefit on Defendant.

257.    Defendant had knowledge that this benefit was conferred upon it.

258.    Defendant has been and continues to be unjustly enriched at the expense of Plaintiffs, and their retention of this benefit under the circumstances would be inequitable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Class, respectfully request that this Court:

A.    determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B.    appoint Plaintiffs as the representative of the Class and their counsel as Class counsel;

C.    award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

D.    award pre-judgment and post-judgment interest on such monetary relief;

E.    grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendant to repair, recall, and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the Axle Defect;

F.    award reasonable attorney's fees and costs; and

G.    grant such further relief that this Court deems appropriate.

DATED: November 17, 2020.

/s/ Richard E. Shevitz
Richard E. Shevitz
Scott D. Gilchrist
COHEN & MALAD, LLP
One Indiana Square Suite 1400
Indianapolis, Indiana 46204
Phone: (317) 636-6481
Facsimile: (317) 636-2593
Email: rshevitz@cohenandmalad.com
Email: sgilchrist@cohenandmalad.com

Matthew D. Schelkopf
Joseph B. Kenney
SAUDER SCHELKOPF, LLC
1109 Lancaster Avenue
Berwyn, Pennsylvania 19312
Phone: 610-200-0583
Facsimile: 610-421-1326
Email: mds@sstriallawyers.com
Email: jbk@sstriallawyers.com

*Attorneys for Plaintiffs and
the Putative Class*

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.


DATED: November 17, 2020.

Respectfully Submitted,

*/s/ Richard E. Shevitz*
Richard E. Shevitz
Scott D. Gilchrist
COHEN & MALAD, LLP
One Indiana Square Suite 1400
Indianapolis, Indiana 46204
Phone: (317) 636-6481
Facsimile: (317) 636-2593
Email: rshevitz@cohenandmalad.com
Email: sgilchrist@cohenandmalad.com

Matthew D. Schelkopf
Joseph B. Kenney
SAUDER SCHELKOPF, LLC
1109 Lancaster Avenue
Berwyn, Pennsylvania 19312
Phone: 610-200-0583
Facsimile: 610-421-1326
Email: mds@sstriallawyers.com
Email: jbk@sstriallawyers.com

*Attorneys for Plaintiffs and*
*the Putative Class*