UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

RANDY TRUITT, et al.,

      Plaintiffs,

      v.                        Case No. 3:20-CV-964 JD

FOREST RIVER, INC.,

      Defendant.

## OPINION AND ORDER

On November 17, 2020, Plaintiffs Randy Truitt, Lance Kuykendall, Carlton Whitmire, David Trupp, Kevin Herinckx, and Fred Smith filed a Complaint on behalf of themselves and a putative class of current and former owners and lessees of recreational vehicles ("RVs") manufactured, marketed, and distributed by Forest River, Inc. with defective axles and a defective suspension. (DE 1 ¶ 1.) Pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), Plaintiffs assert claims on behalf of themselves and/or, in the alternative, to a putative Nationwide Class, a California Class, an Illinois Class, a Nevada Class, a Washington Class, and an Oregon Class. (DE 1 ¶ 112.) Forest River moved to dismiss on all counts. (DE 18.) As set forth below, the Court grants in part and denies in part Forest River's Motion to Dismiss. (DE 18.)

### A.    Factual Background

Forest River has at least 27 different lines of RVs, each of which has an axle manufactured by Lippert Components ("Lippert"). (DE 1 ¶¶ 74, 77.) Lippert fabricates the component parts, finishes and treats the axle shaft, and installs the axle seals, before sending the completed axle to Forest River to be used in each of their RVs. (DE 1 ¶¶ 78, 79.)

The SKF Group, which Plaintiffs describe as "a leading bearing and seal manufacturing company," has published industry standards for installation of seals on axles. (DE 1 ¶ 81.) According to their guide, the proper installation of the axle depends on three conditions: (1) the condition of the shaft; (2) the condition of the bore; and (3) the proper techniques for seal installation. (DE 1 ¶ 81.) To prevent gas leakage, the guide advises that a method known as "plunge grinding" should be used to assure a proper finish on the shaft. (DE 1 ¶ 83.) Additionally, the guide suggests using a heat-treated shaft finish of "between 10 to 20 micro inches" to avoid grease leakage and contamination. (DE 1 ¶ 84.)

Plaintiffs allege that Lippert deviated from these best practices. (DE 1 ¶ 85.) They contend that Lippert failed to plunge grind the axle shafts to a commercially reasonable finish and did not heat treat the shaft, resulting in a finish of only 63 microinches or less. (DE 1 ¶ 85.) This failure resulted in grease contamination of the brakes, which diminished the braking capability and increased the safety risk of Forest River RVs. (DE 1 ¶¶ 87, 88.)

The Complaint further alleges that Forest River knew of the axle defect at "all times relevant." (DE 1 ¶ 89.) First, Plaintiffs allege that Forest River knew of the defect because of pre-sale durability testing it conducted on the axles to make sure they were free from defects. (DE 1 ¶ 90.) According to Plaintiffs' complaint, Forest River claimed on their website that this testing was "rigorous" and that they randomly subjected units to inspection "on top of the inspections that all units undergo . . . ." (DE 1 ¶ 91.) Second, the Complaint alleges that there were at least ten public customer complaints providing Forest River with knowledge of the axle defect. (DE 1 ¶¶ 99–100.) Six of these publicly available complaints were filed with The Office of Defects Investigation within the National Highway Traffic Safety Administration ("NHTSA"). (DE 1 ¶¶ 97, 99.) While some of the NHTSA customer complaints Plaintiffs provided explicitly reference

problems with the axle (DE 1 *Consumer Complaints No. 1, 2, 4, and 5*), other NHTSA

complaints don't mention the axle at all and only generally refer to problems with the brakes (DE

1 *Consumer Complaints No. 3 and 6*). The four other public customer complaints Plaintiffs

provide were posted on third-party websites. (DE 1 ¶ 100.) Nowhere do Plaintiffs allege that

there were an unusual number of customer complaints made about the axle. Third, Plaintiffs

allege that a statement made by Lippert's Vice President of RV Sales on February 17, 2017,

provided Forest River with knowledge of the axle defect. (DE 1 ¶¶ 101, 102.) Plaintiffs assert

that the Vice President made the statement in response to reports of the axle defect, saying "that

his company is, indeed, aware of the problem and aware of the conversation among [owners of

RVs with Lippert axles]." (DE 1 ¶ 102.) Plaintiffs further allege that this statement was covered

by two RV reporting websites, RV Daily News and RVHeadlines.com (DE 1 ¶ 103) and that it

stemmed discussion on three RV "forum websites" (DE 1 ¶ 104).

 The named Plaintiffs each allegedly purchased an RV from Forest River unaware of the

axle defect prior to purchase. (DE 1 ¶¶ 1, 7.) The Complaint alleges that, had these Plaintiffs

been aware of the defect, they would not have purchased the RV, or would have purchased only

at a lesser price. (DE 1 ¶ 7.) Each named plaintiff had similar, although slightly different,

purchasing experiences:

 **Plaintiff Randy Truitt** is a citizen of Kansas who purchased a Forest River RV in
Kansas during April 2015. (DE 1 ¶¶ 13, 14.) The complaint alleges that, when
purchasing his RV, Mr. Truitt relied upon the window sticker and information
attached to the floor model, which did not disclose the defect. (DE 1 ¶ 15.)

 **Plaintiff Lance Kuykendall** is a citizen of Illinois who purchased a Forest River
RV in Illinois during June 2018. (DE 1 ¶¶ 20, 21.) The Complaint alleges that Mr.
Kuykendall relied upon the specifications sheet and advertising pamphlet provided
by Forest River when purchasing his RV. (DE 1 ¶ 22.)

 **Plaintiff Carlton Whitmire** is a citizen of the State of Washington who purchased
a Forest River RV in Washington around February 2017. (DE 1 ¶¶ 30, 31.) The

Complaint alleges that, when purchasing his RV, Mr. Whitmire relied on the design of the floor model, which did not disclose the defect. (DE 1 ¶ 32.)

**Plaintiff David Trupp** is a citizen of the State of Nevada who purchased his RV in Nevada during March 2017. (DE 1 ¶¶ 37, 38.) The Complaint does not allege that Mr. Trupp relied on any information when purchasing his RV.

**Plaintiff Kevin Herinckx** is a citizen of the State of Oregon who purchased a Forest River RV in Oregon during December 2016. (DE 1 ¶¶ 48, 49.) When deciding to purchase the RV, the Complaint alleges that Plaintiff reviewed and relied upon a window sticker, which did not disclose the defect. (DE 1 ¶ 50.)

**Plaintiff Fred Smith** is a citizen of the State of California who purchased a Forest River RV in Arizona during February 2019. (DE 1 ¶¶ 58, 59.) In deciding to purchase a Forest River RV, the Complaint alleges that Mr. Smith attended a trade show in California and relied on representations made by Forest River at the trade show when deciding to purchase his RV. (DE 1 ¶ 61.)

Each Plaintiff had a "Limited Warranty" covering their vehicle for a period of one year against "substantial defects in materials and workmanship attributable to [Forest River]." (DE 1 ¶ 106.) However, the one-year Limited Warranty contained a restriction on the limitations period: "No action to enforce express or implied warranties shall be commenced later than ninety (90) days after expiration of the warranty period." (DE 19-1.) Plaintiffs acknowledge in their Complaint that the Limited Warranty includes this durational limitation (DE 1 ¶ 110), but allege (1) that the Limited Warranty was provided only after the purchase (DE 1 ¶ 109), and (2) that Forest River at all times "knew Class Vehicles suffered from the Axle Defect . . . yet failed to disclose the Defect to Plaintiffs . . . ." (DE 1 ¶ 110.)

After purchasing their Forest River RVs, the Complaint alleges the axle defect resulted in "costly repairs, loss of vehicle use, substantial loss in value and resale value of the vehicles, and other related damage." (DE ¶ 241.) Plaintiffs Kuykendall, Trupp, Herinckx, and Whitmire each sought coverage under Forest River's Limited Warranty. (DE 1 ¶¶ 24, 34, 39, 53.) Plaintiffs Kuykendall, Trupp, and Herinckx were denied coverage under the Limited Warranty (DE 1 ¶¶

24, 39, and 53), while Plaintiff Whitmire's request for coverage was ignored by Forest River (DE 1 ¶ 34.)

On November 17, 2020, Plaintiffs filed this lawsuit, asserting fourteen claims in their complaint:

**Count I** – Violations of California's Consumer Legal Remedies Act (DE 1 ¶¶ 120–31);

**Count II** – Violations of California Unfair Competition Laws (DE 1 ¶¶ 132–38);

**Count III(a)** [1] – Breach of Express Warranty Pursuant to California's Song-Beverly Consumer Warranty Act (DE 1 ¶¶ 139–56);

**Count III(b)** – Breach of Implied Warranty Pursuant to California's Song-Beverly Consumer Warranty Act (DE 1 ¶¶ 157–68);

**Count IV** – Violation of Kansas Consumer Protection Act (DE 1 ¶¶ 169–79);

**Count V** – Violation of Illinois Consumer Fraud and Deceptive Business Practices Act (DE 1 ¶¶ 180–89);

**Count VI** – Violation of the Nevada Deceptive Trade Practices Act (DE 1 ¶¶ 190–201);

**Count VII** – Violations of Washington Consumer Protection Act (DE 1 ¶¶ 202–14);

**Count VIII** – Violations of the Oregon Unlawful Trade Practices Act (DE 1 ¶¶ 215–28);

**Count IX** – Violations of the Magnuson-Moss Warranty Act (DE 1 ¶¶ 229–38);

**Count X** – Breach of Express Warranty (DE 1 ¶¶ 239–45);

**Count XI** – Breach of Implied Warranty (DE 1 ¶¶ 246–50);

**Count XII –** Common Law Fraud (DE 1 ¶¶ 251–54);

**Count XIII –** Unjust Enrichment (DE 1 ¶¶ 255–58). [2]

---

[1] In their Complaint, Plaintiffs repeat Count III twice. The first Count III alleges breach of express warranty under the Song-Beverly Act, while the second Count III alleges breach of implied warranty under the Song-Beverly Act. For convenience, the Court refers to the former as Count III(a) and the latter Count III(b).

[2] For Counts X–XIII, Plaintiffs do not say in their complaint which state's law they believe applies to their claims.

Forest River moved to dismiss all counts for failure to state a claim upon which relief can be granted. (DE 18.)

**B.      Standard of Review**

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepts the factual allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, a plaintiff's claim need only be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

A special rule applies for pleading fraud: under Rule 9(b), "a party must state *with particularity* the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b) (emphasis added). "This ordinarily requires describing the 'who, what, when, where, and how' of the fraud . . . ." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011). However, "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9(b) applies to any claim "that is premised upon a course of fraudulent conduct."

*Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014). Meaning, it applies to both fraud and fraudulent concealment claims. *See id.*

### C.     Discussion

#### (1)     *Counts I and II: Fraud Claims Under California's Consumer Legal Remedies Act ("CLRA") and Unfair Competition Laws ("UCL")*

Forest River first moves to dismiss Counts I and II, which assert claims brought under California's CLRA and UCL. The Court assumes that only Mr. Smith could bring a claim under either act, as Plaintiffs assert in their Response Brief. (DE 22 at 4.) Mr. Smith alleges that Forest River engaged in unfair and deceptive acts by knowingly and intentionally concealing from Plaintiffs the axle defect, violating both statutes. (DE 1 ¶¶ 123, 134.) Because the Court finds that the facts alleged do not support a plausible inference of knowledge by Forest River, as required by the CLRA and UCL, the Court dismisses both claims.

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). Conduct that is "likely to mislead a reasonable consumer" violates the CLRA. *Colgan v. Leatherman Tool Grp., Inc.*, 38 Cal. Rptr. 3d 36, 46 (Cal. Ct. App. 2006) (quoting *Nagel v. Twin Labs., Inc.*, 134 Cal. Rptr. 2d 420, 431 (Cal. Ct. App. 2003)). "[A]t a minimum," Mr. Smith alleges Forest River's deceptive acts violated five provisions of the CLRA:

> **(a)(5)** Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;
>
> **(a)(7)** Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;
>
> **(a)(9)** Advertising goods and services with the intent not to sell them as advertised;

**(a)(14)** Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve; and

**(a)(16)** Representing that the subject of a transaction has been supplied in accordance with a previous representation which it has not.

(DE 1 ¶ 123).

Under the UCL, individuals are prohibited from "unlawful, unfair or fraudulent business act[s] or practice[s]." Cal. Bus. & Prof. Code § 17200. UCL coverage is broad, "embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 83 Cal. Rptr. 2d. 548, 560 (Cal. 1999). However, a UCL claim must be based on a predicate act violating another law or statute. *Iskander v. Laugh Factory, Inc.*, No. LA CV-19-1076, 2020 WL 2114939, at *10 (C.D. Cal. Mar. 17, 2020) (citing *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 83 Cal. Rptr. 2d. 548, 560 (Cal. 1999)). Here, Mr. Smith alleges violations of the CLRA and California Commercial Code § 2313, which sets out the requirements for express warranties. (DE 1 ¶ 137.)

"Generally, the standard for deceptive practices under the fraudulent prong of the UCL applies equally to claims for misrepresentation under the CLRA." *Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1162 (N.D. Cal. 2011) (citing *Consumer Advocates v. Echostar Satellite Corp.*, 8 Cal. Rptr. 3d 22, 29 (Cal. Ct. App. 2003)). "For this reason, courts often analyze the two statutes together." *Id.*; *see also Paduano v. Am. Honda Motor Co.*, 88 Cal. Rptr. 3d 90, 99 (Cal. Ct. App. 2009).

Mr. Smith argues in his complaint that Forest River engaged in unfair and deceptive acts by "knowingly and intentionally concealing" the axle defects from him. (DE 1 ¶ 127.) California courts reject a broad obligation to disclose. *Wilson* v. *Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012). Manufacturers are not liable for a claim of fraudulent omission brought under the CLRA and UCL unless the omission is "contrary to a representation actually made by the

8

defendant, or an omission of a fact the defendant was obliged to disclose." *Daugherty v. Am. Honda Motor Co.*, 51 Cal. Rptr. 3d 118, 126 (Cal. Ct. App. 2006).

Mr. Smith concedes that there was no affirmative misrepresentation by Forest River, but argues there was a fraud by omission of a fact Forest River was obligated to disclose. (DE 22 at 5 n.2.) A duty to disclose arises in four situations under California Law: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 987 (N.D. Cal. 2010) (citing *LiMandri v. Judkins*, 60 Cal. Rptr. 2d 539, 543–44 (Cal. Ct. App. 1997)). Mr. Smith does not argue that there was a fiduciary relationship or a partial representation with suppression of some material facts and relies on an "exclusive knowledge" theory and an "active concealment" theory. (DE 22 at 6.) Forest River argues that Mr. Smith has failed to properly allege a claim under both theories. (DE 19 at 12.)

In order to assert a proper claim under either theory, Mr. Smith must allege that Forest River had knowledge of the defect at the time of sale to survive a motion to dismiss. *See, e.g., Wilson* v. *Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012) ("Plaintiffs must allege HP's knowledge of a defect to succeed on their claims of deceptive practices and fraud [under the CLRA and UCL].")). While the allegation of knowledge may be general under Rule 9(b), the facts which give rise to the knowledge must be plead with "specificity." *Kent v. Hewlett-Packard Co.*, No. 09-5341, 2010 WL 2681767, at *10 (N.D. Cal. July 6, 2010) (rejecting a fraud by omission claim because "[p]laintiffs have not alleged with specificity any other facts that could support a claim that HP knew the computers in suit were defective at the time of sale . . . ").

9

Mr. Smith argues that Forest River had actual knowledge of the defect at the time of sale based on six consumer complaints to the NHTSA, at least four online complaints posted since 2013, pre-sale durability testing, and a statement issued by Lippert's Vice President of RV Sales concerning the defect in February 2017. (DE 1 at 16–23.) Forest River contends that these allegations are insufficient to state a plausible claim upon which relief can be granted. (DE 19 at 12.) The Court agrees with Forest River.

*(a) The Statement by Lippert's Vice President of RV Sales*

Lippert's Vice President of RV Sales is alleged to have made a statement in response to reports of the axle defect, saying "that his company is, indeed, aware of the problem and aware of the conversation among [owners of RVs with Lippert axles]." (DE 1 ¶ 102.) The Complaint alleges that this statement was then covered by two RV reporting websites, RV Daily News and RVHeadlines.com (DE 1 ¶ 103) and that it stemmed discussion on three RV "forum websites" (DE 1 ¶ 104.)

The Court finds that this statement does not support an inference of knowledge because it was not given directly to Forest River and because the content of the statement did not specifically reference the defect. First, if there are no specific allegations that a defendant visited a third-party website, courts typically ascribe less weight to consumer complaints posted on third-party websites when determining whether to dismiss for lack of knowledge. *See Resnick v. Hyundai Motor Am., Inc.*, No. CV 16-00493, 2017 WL 1531192, at *15 (C.D. Cal. Apr. 13, 2017) (holding that a motion to dismiss was proper for claims brought under the UCL and CLRA where Plaintiffs alleged various customer complaints posted on "Hyundaii-Forums.com and Edmunds.com" without alleging "any facts indicating that Hyundai monitored these website"); *see also Grodzitsky v. Am. Honda Motor Co. Inc.*, No 2:12-cv-1142, 2013 WL 690822 at *7

(C.D. Cal. Feb. 19, 2013) (finding that allegations of customer complaints on a website with "no connection to Defendant" were "insufficient to show" actual knowledge). Here, the statement by Lippert's Vice President of RV Sales deserves little weight for a similar reason: the statement being posted on multiple third-party sites does not give rise to an inference that Forest River actually monitored these third-party sites, saw this particular statement on those sites, or saw the discussion surrounding the statement on those sites.

Second, the statement by Lippert's Vice President of RV sales also deserves little weight because its content does not specifically reference the defect. Courts have refused to dismiss claims brought under the CLRA and UCL where the statement or customer complaint specifically references a defect. *See Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1027 (9th Cir. 2017) (upholding the denial of a motion to dismiss where there was an "unusually high volume of complaints *specific to* premature corrosion in F-series motors" to support a claim of presale knowledge). Here, the statement does not specifically reference the axle defect. While the Plaintiffs in their response brief interpret the statement as an admission that Lippert was "aware of the defect" (DE 22 at 8), the Vice President of RV Sales merely stated Lippert was "aware of the problem and aware of the conversation [about the problem]." (DE 1 ¶ 102.) Because the statement did not specifically admit to there being a defect in the axle, and was posted on a third-party website, the Court finds the statement does not plausibly raise an inference that Forest River had knowledge of the defect at the time of sale.

   *(b)  Pre-Sale Testing*

   Mr. Smith's allegation of pre-sale testing also does not provide a sufficient basis for an inference of knowledge. Courts have found that allegations of pre-sale testing deserve little weight where they "fail[] to suggest how this information could have informed Defendant of the

alleged defect at the time of sale." *Grodzitsky*, 2013 WL 690822, at *6 (finding that a generalized assertion that there was pre-release testing data and testing done in response to complaints was insufficient to support the inference that a defendant knew about the design defect at the time of sale); *see In re Toyota Motor Corp.*, 754 F. Supp. 2d 1145, 1192 (finding that a complaint adequately alleged that defendants had knowledge of a defect where the plaintiff alleged the defendant had superior and/or exclusive knowledge of "NHTSA's findings of a 400% increase in 'Vehicle Speed' complaints in [defendant's cars], 37,000 concealed consumer complaints, secret Field Technical Reports and Dealership Report, issues with the electronic throttle actuator assemblies shared only with dealers and later NHTSA, [and also alleging Defendant took action by] eliminat[ing] references to [its cars'] speed control problems [and] conceal[ing] 'surging' complaints . . . "). Here, Mr. Smith's assertion that Forest River conducts "robust" testing on "random units" (DE 1 ¶ 91) fails to suggest how this information could have informed Forest River of the defect in the axle. Therefore, the allegation of pre-sale testing cannot establish Forest River's knowledge of the defect.

### (c) Customer Complaints

As an initial matter, the Court notes that only a portion of the consumer complaints Plaintiffs provide are relevant to whether the claims brought under the UCL and CLRA should be dismissed. Consumer complaints, in some instances, may be sufficient to "raise a reasonable inference that the defendant knew of a product defect." *Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1138, 1145 (N.D. Cal. 2010). When considering whether a reasonable inference of knowledge arises, courts consider the "amassed weight of [customer] complaints" along with other indications of knowledge. *Wilson*, 668 F.3d at 1147 (quoting *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 96–97 (N.D. Cal. 2007)*.* If a complaint is undated, it deserves no

weight since it provides no indication the manufacturer was aware of the defect at the time of the sale. *Id.* at 1148. Similarly, complaints after the time of sale also deserve no weight. *Id.*

As mentioned above, the Court assumes that only Mr. Smith could bring a claim under the UCL and CLRA, as Plaintiffs assert in their Response Brief. (DE 22 at 4.) Because Mr. Smith's purchase took place in February 2019, (DE 1 ¶ 59) the only relevant complaints to Forest River's knowledge of the defect must have occurred prior to February of 2019. Three NHTSA complaints and three online complaints were dated prior to Mr. Smith's sale. (DE 1 at 18–21.) Therefore, only these customer complaints are given weight.

These six customer complaints fail to support an inference of knowledge. The requirement of knowledge under the CLRA and the UCL is only met with consumer complaints when there are "an *unusual* number of complaints, such that the manufacturer would be on notice of a specific problem." *Deras v. Volkswagen Grp. of Am., Inc.*, No. 17-CV-05452, 2018 WL 2267448, at *4 (N.D. Cal. May 17, 2018) (holding that even fifty-six "complaints out of hundreds of thousands of vehicles does not on its face indicate an unusually high number of complaints"); *Sloan v. Gen. Motors L.L.C.*, No. 16-CV-07244, 2017 WL 3283998, at *7 (N.D. Cal. Aug. 1, 2017) (finding that there was not a specific enough showing of knowledge to survive a motion to dismiss where there was "81 complaints posted over the course of seven years"); *Nickerson v. Goodyear Tire and Rubber Corp.*, No. 8:20-cv-00060, 2020 WL 4937561, at *9 (C.D. Cal. June 3, 2020) (finding that an NHTSA database with over "100 consumer complaints related to Marathon tires" with several being passed on to Goodyear for review was insufficient to allow the "Court to infer that [Goodyear] actually knew of the Defect or even an unusually high failure rate . . . ").

13

An unusual number of customer complaints was found in *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1026 (9th Cir. 2017). In *Williams*, the complaint alleged that the customer complaints about outboard motor corrosion on the boats "were so frequent that individual Customer Relations supervisors personally handled as many as 40 or 50 different consumer complaints, or more, regarding the issue, which was an unusually high number of complaints for Yamaha to receive regarding corrosion this soon in the life of the engines." *Id.* The complaint also alleged that this led to the creation of a designated "marine only customer relations department." *Id.* Lastly, the complaint alleged that the consumer complaints were transmitted by this department to make management aware of the complaints and that the manager of customer relations "specifically reviewed the submitted complaints." *Id.*

Mr. Smith's factual allegations more closely resemble those made in *Deras* and *Sloan*, where eighty-one and fifty-six complaints were held to be insufficient to support an inference of knowledge, than *Williams*, where each customer service representative personally handled forty or fifty complaints. Even though Mr. Smith claims there are "many consumers" who have complained about the axle (DE 1 ¶ 100), he provided only six customer complaints relevant to his claims, out of hundreds or thousands of vehicles sold. The Court finds that this is an insufficient basis to infer that Forest River knew of the defect. Even if all ten customer complaints Plaintiffs reference in their Complaint were relevant to Mr. Smith's claims, this too would fall short of the number and circumstances needed to infer knowledge of the defect prior to the sale. Rather, this case resembles cases other courts have dismissed for failure to state a plausible claim for relief, where there had been "an insufficiently small number of [customer] complaints, complaints posted in forums unrelated to the defendant, complaints made after the sale dates, or some combination of these circumstances." *Williams*, 851 F.3d at 1027.

Mr. Smith argues in his Response Brief that the Court should not grant Forest River's Motion to Dismiss Counts I and II for two additional reasons: (1) that Forest River had a federally imposed duty to monitor safety complaints submitted to the government, giving rise to an inference of knowledge (DE 22 at 7) and (2) that these customer complaints, while alone might not be sufficient, are sufficient to give rise to an inference of knowledge when coupled with the statement made by Lippert's Vice President of RV Sales (DE 22 at 7).

The Court finds both arguments unconvincing. The first argument places too great an emphasis on the likelihood Forest River viewed the customer complaints. Instead, the inquiry for the Court is whether the allegations are sufficient to raise an "inference the defendant knew of a product defect" at the time of sale. *Kowalsky*, 771 F. Supp. 2d. at 1145. The likelihood of viewing a complaint is certainly a factor. See *Resnick.*, 2017 WL 1531192, at *15 (granting dismissal where there was no allegation that Defendant monitored the third-party websites where complaints were posted). However, even if it were absolutely certain a given defendant saw a piece of information, dismissal is proper if the information seen is inadequate to support an inference of knowledge. *See Deras,* 2018 WL 2267448, at *4 (granting dismissal where forty-five complaints were made to the NHTSA out of hundreds of thousands of vehicles, even though there had been an allegation that "VW monitored NHTSA complaints"). Therefore, even if Forest River had a legal obligation to view the three–or even six–NHTSA complaints, this number of complaints is not so unusual as to give rise to the inference that Forest River had knowledge of a defect at the time of sale.

The second argument is also off the mark, since the statement, the testing, and the customer complaints, even when considered together, are not sufficient to support an inference of Forest River's knowledge. As discussed above, the statement given by Lippert's Vice

15

President of RV Sales deserves little weight, since it was not specific and was only posted in third-party forums. Additionally, the allegation of pre-sale testing is too generalized to support an inference that Forest River knew of the defect. In other cases, Courts have granted motions to dismiss against Plaintiffs whose cases rely on customer complaints coupled with other similarly "speculative" allegations. *Wilson*, 668 F.3d at 1147 (holding that twelve consumer complaints coupled with "aggregate information" and "data regarding risk of overheating" was "speculative" and did not give rise to an inference of knowledge.). Here, even considered together, the Court finds that all three allegations do not adequately support an inference of Forest River's knowledge of the axle defect at the time of sale.

Because the Court finds that Mr. Smith has not plead the specific facts required to support a plausible inference that Forest River had knowledge of the defect, the Court **GRANTS** the motion to dismiss Counts I and II.

### (2)    *Counts IV–VIII: Other State Law Fraud Claims*

In Counts IV–VIII, Plaintiffs bring claims under the consumer protection acts of Kansas, Illinois, Nevada, Washington, and Oregon. (DE 1.) Forest River argues that the claims should be dismissed for failure to state a claim of relief, adopting the same argument as above. (DE 19.) The Court agrees.

Each of these claims is subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b) because they rely on the same fraudulent conduct that the UCL and CLRA claims relied upon. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) ("[a] claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate 9(b)'s heightened pleading requirements."). Accordingly,

when applying the Kansas, Illinois, Nevada, Washington, and Oregon consumer protection statutes, Federal Courts sitting in those states have applied Rule 9(b).[3]

Like California, each of the consumer fraud statutes in Kansas, Illinois, Nevada, Washington, and Oregon requires that the defendant possess actual knowledge of the defect at the time of purchase in order to make out a fraud by omission claim. *See Musil v. Hendrich*, 627 P.2d 367, 372 (Kan. Ct. App. 1981) (affirming dismissal a Kansas Consumer Protect Act claim, because there was "no evidence" that the seller of a product knew at the time of sale there was a defect, which is "required by" the Kansas Consumer Protection Act's section addressing unconscionability); *Miller v. William Chevrolet.*, 762 N.E.2d 1, 14 (Ill. App. Ct. 2001) ("Unlike an action for misrepresentation under the Act, where even innocent misrepresentations can support liability, an action for fraudulent concealment logically demands that defendants have prior knowledge of the information that they are alleged to have suppressed."); *Poole v. Nevada Auto Dealership Invs., L.L.C.*, 449 P.3d 479, 484 (Nev. Ct. App. 2019) (finding that the term "knowing[]"in the Nevada Deceptive Trade Practices Act requires the "knowledge that the facts exist which constitute the act or omission"); *Potter v. Wilbur-Ellis Co.*, 814 P.2d 670, 674 (Wash. 1991) (finding that a deceptive act occurs under the Washington Consumer Protection

---

[3] *See Rasnic v. FCA US*, No. 17-2064, 2017 WL 6406880, at *6 (D. Kan. Dec. 15, 2017) ("Allegations under the [Kansas Consumer Protection Act] must be pled with particularity as required by Rule 9(b)"); *Della Parola Capital Mgmt v. Blaze Porfolio Sys.*, No. 21 CV 321, 2021 WL 3674613, at *4 (N.D. Ill. Aug. 19, 2021) (claims brought under the Illinois Consumer Fraud Act are "subject to the heightened pleading standards of Rule 9(b)"); *Switch, Ltd. v. Uptime Inst.*, 426 F. Supp. 3d 636, 643 (D. Nev. 2019) ("[T]he elements of a [Nevada Deceptive Trade Practices Act] claim[] must be pled with particularity pursuant to FRCP 9(b)."); *Fid. Mortg. Corp. v. Seattle Times Co.*, 213 F.R.D. 573, 575 (W.D. Wash. 2003) (finding that a claim brought under the Washington Consumer Protection Act was grounded in fraud and therefore subject to the heightened pleading requirements of Rule 9(b)); *Vinci v. Hyundai Motor Am.*, CV 17-0997, 2018 WL 6136828, at *12 (C.D. Cal. Apr. 10, 2018) (finding that Rule 9(b) applied to an Oregon Unlawful Trade Practices Act claim because "all of Plaintiffs' claims were based on the same allegedly fraudulent course of conduct . . . and thus the heightened pleading standard, applies.").

Act when the seller "has within his knowledge a material fact which, if communicated to the buyer, will render the goods . . . substantially less desirable."); *Seib v. Metro. Life Ins. Co*., No. 3:19-cv-00892, 2020 WL 2531119, at *11 (D. Or. Mar. 30, 2020) (describing how Oregon's Unlawful Trade Practices Act requires "willfulness," meaning that defendant know or should have known its conduct violated the UTPA).

In their response brief, Plaintiffs make no argument as to why the Court should alter its analysis from Part C. 1., and the Court sees no reason to. In Part C. 1., the Court found that the claims brought under the UCL and CLRA did not adequately allege specific facts raising a plausible inference that Forest River possessed knowledge of the defect under Federal Rule of Civil Procedure 9(b). The Court finds that Counts IV-VIII each suffer from the same pleading defect. Therefore, the Court **GRANTS** the motion to dismiss for Counts IV-VIII.

### *(3)     Counts III(a) and III(b): Express and Implied Warranty Claims Under California's Song-Beverly Act*

Forest River next argues that because Mr. Smith purchased the RV outside of California, the Song-Beverly Act is inapplicable, and that both counts should be dismissed for failure to state a plausible claim upon which relief could be granted. (DE 19 at 9.) The Court agrees.

The Song-Beverly Act is explicitly limited to goods sold in California. *See* Cal. Civ. Code §§ 1792, 1792.1, 1792.2, 1793.3, 1793.6. Under the Song–Beverly Act, "sale" means "(1) the passing of title from the seller to the buyer for a price, or (2) a consignment for sale." Cal. Civ. Code § 1791(n). "California Law is clear that when title passes outside of California, the Song–Beverly Act does not apply." *Gaynor v. W. Rec. Vehicles, Inc.*, 473. F. Supp. 2d 1060, 1062 (C.D. Cal. 2007) (citing *Cummins, Inc. v. Superior Ct.*, 115 P.3d 98 (Cal. 2005) (Song–Beverly Act did not apply to motorhome sold in Idaho and subsequently brought into California); *Davis v. Newmar Corp.*, 38 Cal. Rptr. 3d 690 (Cal. Ct. App. 2006) (Song–Beverly Act did not

apply to sale of motorhome negotiated in California where contract required delivery in Arizona); and *Cal. State Elecs. Ass'n v. Zeos Int'l Ltd.*, 49 Cal. Rptr. 2d 127 (Cal. Ct. App. 1996) (Song–Beverly Act did not apply to goods where title passed in Minnesota upon shipment of goods from seller to buyer in California)).

Plaintiffs do not allege that any Plaintiff purchased a vehicle in California. (DE 1 at 4–10.) Even the Plaintiff who resided in California, Mr. Smith, left California and bought his Forest River RV in Arizona. (DE 1 ¶¶ 58–60.) Accordingly, without any sale of an RV in California, the Court **GRANTS** Forest River's motion to dismiss Counts III(a) and III(b) for both claims brought under the Song-Beverly Act.

### *(4)      Counts IX, X, and XI: Breach of Express Warranty, Implied Warranty, and Magnuson-Moss Warranty Act*

Forest River next argues that Plaintiffs fail to assert a plausible claim upon which relief can be granted for breach of express warranty, implied warranty, and violations of the federal Magnuson-Moss Warranty Act because each claim has lapsed under the statute of limitations. (DE 19 at 19.) Under the Magnuson-Moss Act, consumers can "enforce written and implied warranties in federal court, borrowing state law causes of action." *Schimmer v. Jaguar Cars, Inc.,* 384 F.3d 402, 405 (7th Cir. 2004). "The court will then look to state law to determine the remedies available." *Id.* Here, Plaintiffs' Magnuson-Moss Act claim hinges on their express and implied warranty claims. Therefore, if their express and implied warranty claims fail, then so too does their claim under the Magnuson-Moss Act.

A federal court sitting in diversity must follow the statute of limitations that the state in which it is sitting would use. *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 707 (7th Cir. 2004) (citing *Guaranty Trust Co. v. York*, *326* U.S. 99, 110 (1945)). "This applies to actions brought under the Class Action Fairness Act as well, since CAFA is based upon diversity jurisdiction."

*See In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1167-68 (N.D. Cal. 2016) (quoting *In re NVIDIA GPU Litig.*, 2009 WL 4020104, at *5 (N.D. Cal. Nov. 19, 2009)). Since the Court sits in Indiana, and the action is being brought under CAFA, Indiana law governs the applicable statute of limitations.

Indiana law provides that "[a]n action for breach of any contract for sale must be commenced within four (4) years after the cause of action has accrued." Indiana Code § 26-1-2-725. However, in their original agreement, "parties may reduce the period of limitations to one (1) year, but may not extend it." *Id.*

Forest River argues that the claims are barred because the Limited Warranty reduced the period of limitations to a year and 90-days from the date of purchase. (DE 19-1.) The most recent purchase of an RV by a plaintiff was in February 2019. (DE 1 ¶ 59.) Plaintiffs filed the lawsuit on November 17, 2020. (DE 1.) So, if the reduction in the period of limitations found in the Limited Warranty applies, each Plaintiffs' claim for breach of warranty would be time barred as falling outside of the year and 90 days limitation provided in the Limited Warranty.

However, Plaintiffs argue that their claims are not time barred because the reduction of the statute of limitations contained in the Limited Warranty is unconscionable. (DE 1 ¶ 109.) They claim that the contract was procedurally unconscionable because Forest River only provided "the Limited Warranty to buyers after [the] purchase [was] complete (DE 1 ¶ 109)." Furthermore, they claim that the contract was also substantively unconscionable because Forest River "knew Class Vehicles suffered from the Axle Defect and would continue to pose safety risks after the Base Limited Warranty purportedly expired, yet failed to disclose the Defect . . . ." (DE 1 ¶ 110.) The Court agrees with Plaintiffs that the motion to dismiss should be denied

because of the allegation the warranty was provided after the sale, but would not characterize this as an issue of procedural unconscionability.

It appears to the Court that Plaintiff has mistaken procedural unconscionability with the meeting of the minds required to form a contract. Unconscionability is a question of law for the court to decide. *Rispens v. Hall Farms, Inc.*, 621 N.E.2d 1078, 1086 (Ind. 1993); *Hahn v. Ford Motor Co.*, 434 N.E.2d 943, 951 (Ind. Ct. App. 1982). The Seventh Circuit has ''described Indiana as 'unfriendly' to unconscionability generally.'' *Jackson v. Bank of Am. Corp.*, 711 F.3d 788, 792 (7th Cir. 2013) (noting that ''[a]lthough Indiana recognizes unconscionability, courts do not regularly accept it as an argument''). Indiana recognizes two ''branches'' of unconscionability: substantive and procedural. *Id.* Substantive unconscionability refers to ''oppressively one-sided and harsh terms of a contract.'' *Hahn*, 434 N.E.2d at 951. Procedural unconscionability arises "from irregularities in the bargaining process or from characteristics peculiar to one of the parties." *DiMizio v. Romo*, 756 N.E.2d 1018, 1024 (Ind. Ct. App. 2001).

The issue at hand, however, is whether the period restriction is a part of the contract at all. In order for a limitation to be enforceable, the limitation "must have actually been part of the agreement" entered into by Forest River. *Castagna v. Newmar Corp.*, 340 F. Supp. 3d 728, 744 (N.D. Ind. 2018). In other words, there must have been "mutual assent or a meeting of the minds" on the limitation in order for the term to be enforceable. *Carr v. Hoosier Photo Supplies, Inc.*, 441 N.E.2d 450, 455 (Ind. 1982); *Sanco, Inc. v. Ford Motor Co.*, 771 F.2d 1081, 1086 (7th Cir. 1985) (In order for a warranty to be a part of an agreement of sale, "a seller [must] not 'spring' [the] warranty disclaimer on a customer after [the] sale has been consummated; the parties must have understood that the warranty, and *any disclaimers or limitations*, were part of their deal."); *Rispens, 621 N.E.2d at 1087* (denying summary judgment after finding that a

limitation of liability was not unconscionable because there was still a genuine issue of fact as to whether the buyer was aware of the limitation at the time of the sale, which would mean there was no mutual assent).

Forest River argues that the Court should deviate from *Castagna's* holding because that case concerned unconscionability for remedy limitations in warranties, while this case "concerns the *limitations period* set forth in the Limited Warranty." (DE 23 at 8.) But Forest River misunderstands *Castagna*, which explicitly held that the "limitation [was not] unconscionable," but still denied summary judgment because plaintiffs asserted in an affidavit that the Limited Warranty was provided after the purchase and without their knowledge of the limitation, which would have prevented the limitation from being enforceable. *Castagna*, 340 F. Supp. 3d at 744. The requirement of mutual assent is not confined to remedy limitations in warranties, but rather is a bedrock formation requirement for all contracts. *Carr*, 441 N.E.2d at 455.

The Court finds that Plaintiffs' allegation that they received the Limited Warranty following purchase, accepted as true, creates a plausible claim that they were unaware of the warranty limitation at time of purchase and that the restriction on the limitations period was invalid. Therefore, the Court **DENIES** Forest River's Motion to Dismiss Counts IX, X, and XI.

### (5)   *Count XII: Common Law Fraud*

Forest River argues that Plaintiffs' common law fraud claims are really contract claims disguised as tort claims and that the claims are being brought "under Indiana law." (DE 19 at 22.) However, Plaintiffs' Complaint merely asserts they are bringing a claim of "Common Law Fraud" without mentioning which particular state's common law they are bringing the claim under. (DE 1¶ 246–50.) In order to determine which jurisdiction's law should apply, the Court considers whether this is a tort or contract claim as part of a choice-of-law analysis.

As a rule, a court in a diversity case must apply the substantive law of the forum in which it sits, *Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938), including that pertaining to choice of law. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941); *American Family Mut. Ins. Co. v. Williams,* 839 F. Supp. 579 (S.D. Ind. 1993); *Hubbard Mfg. Co., Inc. v. Greeson,* 515 N.E.2d 1071 (Ind. 1987). "This applies to actions brought under the Class Action Fairness Act as well, since CAFA is based upon diversity jurisdiction." *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1167–68 (N.D. Cal. 2016) (quoting *In re NVIDIA GPU Litig.*, 2009 WL 4020104, at *5 (N.D. Cal. Nov. 19, 2009). When the laws of more than one jurisdiction arguably are in issue, *Erie* requires the federal court to apply the choice of law rules of the state in which it sits. *Jean v. Dugan,* 20 F.3d 255 (7th Cir.1994) (*citing Klaxon Co.,* 313 U.S. at 496–97); *Hubbard Mfg.*, 515 N.E.2d at 1073. Accordingly, this court will apply Indiana's choice of law rules in determining which state's law governs the substantive issues.

"The characterization of the nature of an action bears upon the choice-of-law question." *Travelers Ins. Companies v. Rogers*, 579 N.E.2d 1328, 1330 (Ind. Ct. App. 1991). Forest River argues that these common law fraud claims are really a breach of contract claim that has been "repackage[d]" as fraud because the source of their duty arose from a contract. (DE 19 at 22.) Plaintiffs argue that this should be characterized as a common law fraud claim because "the basis of the fraud claim is not Forest River's failure to repair under the Limited Warranty," but the decision to sell the Class Vehicles with a known safety-related defect and conceal that fact from purchasers to induce sales. (DE 22 at 17.)

Under Indiana Law, "a party may not restyle a breach-of-contract claim as a tort simply to obtain additional damages," *Bayview Loan Servicing, L.L.C. v. Golden Foods, Inc.*, 59 N.E.3d 1056, 1068 (Ind. Ct. App. 2016) (quoting *French–Tex Cleaners, Inc. v. Cafaro Co.*, 893 N.E.2d

1156, 1167 (Ind. Ct. App. 2008)). A fraud claim is really a repackaged "breach of contract" claim where it amounts "to a series of misrepresentations stemming from and about the contract itself." *Tobin v. Ruman*, 819 N.E.2d 78, 86 (Ind. Ct. App. 2004). However, to the extent that a plaintiff's interests have been invaded beyond mere failure to fulfill contractual obligations, a tort remedy should be available. *Greg Allen Const. Co. v. Estelle,* 798 N.E.2d 171, 173 (Ind. 2003).

The court finds that Plaintiffs claims sound of tort. As they argue in their Response to Forest River's Motion to Dismiss, Plaintiffs "fraud claim is not Forest River's failure to repair under the Limited Warranty; it is Forest River's decision to sell the Class Vehicles with a known safety-related Defect and conceal that fact from purchasers to induce sales." (DE 22 at 17). Therefore, because the claims sound in tort, Indiana choice-of-law analysis concerning tort applies.

In tort cases, Indiana choice-of-law analysis has multiple steps. *Simon v. United States*, 805 N.E.2d 798, 804 (Ind. 2004). First, the court must determine whether the differences between the laws of the states are "important enough to affect the outcome of the litigation." *Hubbard v. Greeson,* 515 N.E.2d 1071, 1073 (Ind. 1987). Then, if the court determines a conflict exists, the traditional *lex loci delicti* rule (the place of the wrong) is presumed to apply. *Id.* Under this rule, the court applies the substantive laws of the "the state where the last event necessary to make an actor liable for the alleged wrong takes place." *Id.*

The Court finds it unnecessary to proceed past the first step. An essential element of common law fraud in Indiana, Illinois, Kansas, Nevada, Oregon, Washington, and California is that the defendant has knowledge that the statement or omission was false.[4] As discussed above

---

[4] *Bilimoria Computer Sys. v. America Online*, *Inc.*, 829 N.E.2d 150, 155 (Ind. Ct .App.2005) ("[t]he essential elements of common law fraud [include] . . . knowledge or reckless ignorance [of a material representation's]

in Part C. 1., Plaintiffs have not provided the specific facts necessary to make out a plausible

claim of Forest River's knowledge of the defect under rule 9(b). This means the choice of law

analysis stops at the first step because there is not a difference between the laws of the states that

is "important enough to affect the outcome of the litigation." *Hubbard*, 515 N.E.2d at 1073. But

it also means that Plaintiffs' common law fraud claims are dismissed because they fail to state a

plausible claim for relief under any potentially applicable state law. Therefore, the Court

**GRANTS** Forest River's Motion to Dismiss Count XII.

### *(6)*     *Count XIII: Unjust Enrichment*

Lastly, Forest River moves to dismiss Plaintiffs' claim of unjust enrichment. (DE 19 at

21.) In support of their argument that Plaintiffs' claim of unjust enrichment should be dismissed,

Forest River again argues that this is just a contract claim in disguise. However, in making this

argument, Forest River cites to no cases discussing unjust enrichment. *In re Jenkins*, 583 B.R.

446, 452 (N.D. Ill. 2018) (citing *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)

("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent

authority, are waived."). Because Forest River provides no law discussing unjust enrichment to

support its argument, the Court **DENIES** its Motion to Dismiss Count XIII.

---

falsity"); *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591 (Ill. 1996) ("[t]he elements of common law fraud [include] defendant's knowledge that the statement was false"); *Bomhoff v. Nelnet Loan Services, Inc.*, 109 P.3d 1241 (Kan. 2005) (describing how an essential element of common law fraud is "an untrue statement of fact [that is] known to be untrue by the party making it"); *Bulbman, Inc. v. Nev. Bell*, 825 P.2d 588, 592 (Nev. 1992) (listing "knowledge or belief that the representation is false" as an element of a common law fraud claim); *Strawn v. Farmers Ins. Co. of Oregon*, P.3d 1199, 1209 (Or. 2011) (writing that an essential element of common law fraud is that a defendant make a false material misrepresentation "knowing that the representation was false"); *Williams v. Joslin*, 399 P.2d 308, 308 (Wash. 1965) (in order to make out a claim of common law fraud "the speaker [must have] knowledge of its falsity"); *Collins v. eMachines, Inc.*, 134 Cal. Rptr. 3d 588, 596 (Cal. Ct. App. 2011) ("The elements of common law fraud in California [include] . . . knowledge of falsity.").

**D.     Conclusion**

Based on the foregoing, Forest River's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART.**

1.  The Court **GRANTS** Forest River's motion to dismiss Count I (Violations of California's Consumer Legal Remedies Act) and Count II (Violations of California's Unfair Competition Laws). Each of these counts is **DISMISSED WITH PREJUDICE**.

2.  The Court **GRANTS** Forest River's motion to dismiss Count III(a) (Breach of Express Warranty Pursuant to Song-Beverly Consumer Warranty Act) and Count III(b) (Breach of Implied Warranty Pursuant to Song-Beverly Consumer Warranty Act). Each of these counts is **DISMISSED WITH PREJUDICE**.

3.  The Court **GRANTS** Forest River's Motion to Dismiss Counts IV (Violation of the Kansas Consumer Protection Act), V (Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act), VI (Violation of the Nevada Deceptive Trade Practices Act), VII (Violations of the Washington Consumer Protection Act), and VIII (Violations of the Oregon Unlawful Trade Practices Act). Each of these counts is **DISMISSED WITH PREJUDICE**.

4.  The Court **GRANTS** Forest River's Motion to Dismiss Count XII (Common Law Fraud). The count is **DISMISSED WITH PREJUDICE**.

5.  The Court **DENIES** Forest River's Motion to Dismiss Count IX (Violations of the Magnuson-Moss Warranty Act), Count X (Breach of Express Warranty), Count XI (Breach of Implied Warranty), and Count XIII (Unjust Enrichment).

SO ORDERED.

ENTERED:  September 7, 2021

                                    /s/ JON E. DEGUILIO
                                Chief Judge
                                United States District Court